STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
FRED GALATI, DEFENDANT-APPELLANT.

Argued February 4, 1974—Decided May 8, 1974.

*Mr. Anthony L. Mezzacca* argued the cause for defendant-appellant (*Messrs. Mezzacca & Maddalena,* attorneys).

*Mr. Lewis N. White, III,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. John S. Kuhlthau,* Middlesex County Prosecutor, attorney).

PER CURIAM. Defendant is a police officer of Edison Township. He stands under indictment in Middlesex County for atrocious assault and battery and misconduct in office, in violation, respectively, of *N. J. S. A.* 2A:90–1 and *N. J. S. A.* 2A:85–1, the same apparently growing out of an altercation incident to an attempted arrest of a motorist. At the time, a fellow police officer, Richard Fisher, was working as defendant's partner, and presumably witnessed the events which gave rise to the charges.

Officer Fisher was called to testify before the Grand Jury which indicted his fellow officer, the defendant. His testimony, which is in possession of both sides of the case due to pretrial discovery, is said to be exculpatory or at least favorab'e to defendant. Nevertheless, the prosecution intends to call him as its witness, in view of his presence at the scene of action underlying the alleged offense. And the State asserts that in such posture, the attorney for the defendant, Anthony L. Mezzacca, a reputable member of the Bar, must nevertheless withdraw from the defense due to the following circumstances.

The defense attorney, privately retained by defendant to represent him on the trial of this indictment, is also an attorney regularly retained by Policemen's Benevolent Association, Local No. 75, of Edison Township (hereinafter Edison PBA) and he is likewise an attorney (the record does not disclose whether singly or one of several) for the New Jersey State Policemen's Benevolent Association, Inc.

(hereinafter State PBA). The State P.BA, of which Edison PBA is a member, issues charters to local associations such as Edison PBA, which thereupon become subject to the by-laws of the State organization. The designated role of the PBA attorney (Article XII, Constitution and By-Laws of State PBA) is described as follows:

Article XII, Section 1(a)
The attorney shall advise on all legal matters pertaining to the good and welfare of this association, prepare all legislation and advise and render legal opinions upon request of the President * * *.

These factors would seem to indicate a close professional relationship between the attorney and the PBA organization and its members, particularly on the local level. Officer Fisher and defendant, Officer Galati, are fellow members of Edison PBA.

This coincidence of events caused the trial court, at the prosecution's behest, to oust the defense attorney from his client's case for "conflict of interest," in deference to Ethics Opinions 113 of July 20, 1967, and 196 of February 4, 1971, *infra*. Defendant sought to appeal from this order of disqualification, and the Appellate Division denied leave to appeal. Our Court granted leave to appeal and heard oral argument for the purpose of final disposition of this limited issue.

The nub of the controversy (with a single exception) seems to be well described by the defense version of the "question presented" in the moving papers, as follows:

May an attorney who represents a PBA defend, by private arrangement, a member of that organization, in a criminal matter, when the prosecution, as a matter of trial tactics, declares it shall call as a witness a person who is also a member of the same PBA, when such prospective witness is not the alleged victim, is not the complaining or principal witness, gave prior testimony before a Grand Jury which is favorable to defendant, and would be nevertheless called as a witness for the defense if not called by the state?

Our exception to the question presented: — we do not assume that the prosecution intends to call Officer Fisher "as

a matter of trial tactics" in any improper sense, but simply in pursuance of its view of its prosecutorial duty. We do not consider this factor material to decision.

The Supreme Court's Advisory Committee on Professional Ethics (*R.* 1:19) has three times considered the private representations permitted a PBA or similar "organizational" attorney. *Opinion* 113, 90 *N. J. L. J.* 473 (1967), *Opinion* 196, 94 *N. J. L. J.* 65 (1971), *Opinion* 260, 96 *N. J. L. J.* 1129 (1973) But this Court as such has not previously spoken to the issue. In doing so now we shall try to identify the ethical problem with some precision, for the subsequent guidance of the Bar, aside from the disposition of the present issue.

The analysis of the ethical problem is important, in order to understand and define, from the standpoint of fairness, the types of professional representation which must be foreclosed. Central to the ethical dilemma is this condition of affairs: when the lawyer of a PBA chapter consults periodically and intimately with its membership for the legislative, economic and other well-being of the organization and its members, he acquires, or is generally believed to acquire a special status, a relationship, a bridge of confidentiality and trust which sets him apart from other lawyers.

*Opinion* 113, *supra,* outlined the result:

> The real ethical problem is created once the attorney representing the P.B.A. and its members, directly or indirectly, appears in court representing either defendants on complaints made by the police officer, or complainants where the police officer is called as a witness for the complainant. In the minds of some, and outspoken in others, will always be the belief that success in the trial was achieved by unfair help and assistance from the police officer and the P.B.A.

In its *Opinion* 196, *supra,* the Advisory Committee mentioned another pitfall, again relating mere appearance to inference of wrongdoing:

> Under the Code of Professional Responsibility adopted by the American Bar Association (1969), it is stated in DR 7–104 that in his representation of a client the lawyer shall not communicate with

one having an adverse interest. In the example cited above, where one organization member is a defendant and the proposed witness against him is another member of the same organization, the opportunity, if not the temptation, to communicate with the witness — who under the circumstances would have an adverse interest — would be difficult to resist. And, even if resisted, the appearance inevitably would lead to inferences of wrongdoing.

So it is that when the PBA's lawyer undertakes the representation of a private cause in which a member of that same PBA is destined to testify (on one side or another) there is bound to occur a public suspicion that the PBA witness will be inclined to palliate or vivify his testimony in order to accommodate the lawyer who, outside the courtroom, is *en rapport* with and supportive of the private and organizational interest of the PBA witness.

And should the public so believe, and thus suspect the outcome of the litigation proceeded from undue influence upon the policeman's testimony, and not from the merits, there is a sure result. The doubts thus engendered or suspicions aroused ("these fellows all stick together") impoverish the appearance of justice and taint the image of law and its even-handed enforcement.

Thus we must notice that in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact. *Cf.* Disciplinary Rule 9–101, exhorting the lawyer to avoid "even the appearance of impropriety." So also, in *In re Spitalnick,* 63 *N. J.* 429, 431, 432 (1973), in upholding "the fundamental principle of disinterested justice which is the bulwark of our judicial system," our Court asserted that "a community without certainty in the true administration of justice is a community without justice."

This Court held in *State v. Deutsch,* 34 *N. J.* 190, 206 (1961), that "it is vital that justice be administered not only with a balance that is clear and true but also with such eminently fair procedures that the litigants and the public will always have confidence that it is being so administered",

quoting the words of Justice Frankfurter in *Offutt v. United States*, 348 *U. S.* 11, 14, 75 *S. Ct.* 11, 13, 99 *L. Ed.* 11, 16 (1954): "justice must satisfy the appearance of justice."

In a free democracy the administration of justice rests very largely not only on Constitution and laws, but upon public confidence in its integrity and impartiality in execution. Representatives of law enforcement such as police are components of that administration of justice. The PBA has, in the public mind, a quasi-official status, as the conspicuous spokesman for the interests of all policemen. Any failure of confidence in the PBA diminishes confidence in the police force as a whole, and thus in the administration of justice. Suspicion of the local PBA arising from an officer's courtroom activity can only weaken public confidence in both judicial and executive government at a most sensitive level.

This quasi-public status gives force to the analogy to the rule forbidding a municipal attorney from undertaking a private representation in his municipality's court, lest the public think he can trade on his official connections. *R.* 1: 15–3(b); *Cf. In re A. and B.,* 44 *N. J.* 331 (1965).

The ethical dilemma would be exacerbated were we dealing here not with an indictment growing out of an alleged physical altercation, but with a case more immediately implicating the administration of justice, — let us say, a case of internally exposed police corruption. The fundamental loyalty of the PBA probably lies not with its members as individuals, but with its members *qua* representatives of an honest, incorruptible police force. When a policeman stands accused, the PBA implicates itself by lending its lawyer to the defense (so far as public appearance is concerned) in an advocate's role on behalf of an individual, albeit the organization's larger role is to seek out and expose all who are corrupt. The loyalty of PBA friendships might well conflict with the PBA's partisan position on corruption, the latter being "prosecutorial" in spirit, dedicated to the

exposure and elimination of corruption. Such an example brings into very sharp focus the ethical dilemma presented.

And this duality of sympathy and resulting conflict are unaffected by the consent of PBA and its accused member to such representation. As Justice Hall said in *Ahto v. Weaver*, 39 *N. J.* 418, 431 (1963), "Where the public interest is involved, he may not represent conflicting interests even with the consent of all concerned." *Cf.* C. J. Weintraub, "Notice to the Bar", 86 *N. J. L. J.* 713 (1963).

The Court appreciates that the views expressed today will preclude a PBA attorney in the future from all representations in which an officer from the same PBA chapter will be called to testify. The sacrifice thus called for seems necessary to the appearance and substance of justice and good government.

This Court on occasion, for the sake of essential fairness, has forborne or modified action it would otherwise take, or intends to take in the future, under special mitigating circumstances. These have included instances involving" * * * the first case in which this practice" had been brought to its attention, *In re Kamp,* 40 *N. J.* 588, 599 (1963) ; or where it thought "* * * a considerable portion of the Bar was unaware of the ethical problem" presented, and where the Court had "* * * no reported opinion touching the immediate subject," *In re Abrams,* 56 *N. J.* 271, 278 (1970).

Applying these principles to the instant case, the defense attorney will not be required to withdraw. There is no suggestion of ethical blemish of any kind on his past record as an attorney, nor any purpose of his representing defendant which demonstrates an intent to overreach or gain advantage. It cannot be said that the Ethics Opinions quoted were framed in such a way as plainly to fit the peculiarities of the instant case. These unusual factors include the free exchange and equal availability to the parties of Fisher's Grand Jury version of the incident, the lack of abuse of confidences or the taking of any unfair advantage, and the apparent lack of essential importance of Fisher's testimony

to the State, which might accommodate any actual over-reaching in an attempt to influence his testimony.

Owing to the attorney's substantial involvement as defense counsel at this time we cannot in good conscience compel him to abandon the defense, particularly in view of probable prejudice to his client. In the future, however, all similar or like representations must be eschewed.

The order of the trial court requiring Mr. Mezzacca to withdraw is hereby reversed and the matter is remanded to the trial court for the entry of an appropriate order consistent with this opinion, so that the main cause may proceed to disposition.

*For reversal and remandment*—Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For affirmance*—None.