NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2943-14T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DAVID HUDSON,

    Defendant-Respondent.

APPROVED FOR PUBLICATION

December 21, 2015

APPELLATE DIVISION

Argued October 26, 2015 – Decided December 21, 2015

Before Judges Lihotz, Fasciale[1] and Nugent.

On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-07-1810.

Alfred V. Gellene argued the cause for appellant (Fusco & Macaluso Partners, LLC, attorneys; Mr. Gellene, on the brief).

Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Ms. Rosano, of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

---

[1] Judge Fasciale did not participate in oral argument. He joins the opinion with counsel's consent. R. 2:13-2(b).

Defesndant David Hudson, a Newark police officer, was indicted on July 18, 2014, charged with third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); second-degree possession of a weapon with purpose to use it unlawfully against another, N.J.S.A. 2C:39-4(a); and official misconduct, N.J.S.A. 2C:30-2(b). The charges stem from a road rage incident, during which defendant allegedly followed the victim to his home and threatened him with a gun. Newark Police Officers Thomas Hernandez and Queen Bates responded to the victim's 9-1-1 call and the Newark Police Department principally conducted the criminal investigation supporting the indictment.

Defendant retained Anthony Fusco and his firm Fusco & Macaluso Partners, LLC to provide his legal representation. The State moved to disqualify counsel and his firm asserting Fusco had an actual and apparent conflict of interest because he was counsel for the New Jersey Fraternal Order of Police Lodge (FOP), the union representing Newark Police Officers, and because Fusco previously represented a Newark officer involved in the investigation. The trial judge agreed and concluded Fusco was disqualified from serving as criminal defense counsel because of the apparent conflict, which created an appearance of impropriety.

On our leave granted, defendant appeals from the January 14, 2015 order memorializing this determination, arguing:

POINT ONE
MR. FUSCO'S RELATIONSHIP WITH THE NJFOP DOES NOT DISQUALIFY HIM OR HIS FIRM FROM REPRESENTATION OF THE DEFENDANT IN THIS CASE.

POINT TWO
THERE IS NO ACTUAL CONFLICT OF INTEREST IN THIS MATTER.

Following our review, we reverse the order of disqualification and remand for further proceedings. We conclude the facts in this record do not support the judge's conclusions of an actual conflict of interest. We also conclude the trial judge erred in grounding his determination on the possible appearance of impropriety. The appearance of impropriety may not be used as a basis to find a conflict of interest under RPC 1.7 or RPC 1.9. In re Supreme Court Advisory Comm. on Prof'l Ethics Op. No. 697, 188 N.J. 549, 563 n.5, 568 (2006).

These undisputed facts are found in the record of the State's motion seeking to disqualify Fusco and defendant's response. Fusco, as counsel for the FOP, represents "member police officers in administrative, civil and criminal matters which [arise] out of their duties as police officers." Further, Fusco is a featured columnist for the FOP News Magazine, where

he regularly contributes, and is designated as "State Lodge Attorney Tony Fusco." The State averred Fusco's representation of members of the FOP, who are employed by the Newark Police Department, precluded his representation of defendant because the criminal charges were principally investigated by the Newark Police Department. The State also suggested Fusco's role as attorney for the FOP equated to representation of the officer members, including the officers of the Newark Police Department.

Additionally, in a supporting certification, an assistant prosecutor identified ten Newark police officers as potential witnesses, stating "some of these officers will testify at the pending trial." The list included Lieutenant Camilo Mos, who was present during defendant's videotaped custodial interview, but neither conducted the interview nor Mirandized defendant. The State also related Lt. Mos' disclosure he had engaged Fusco to represent him "in an administrative hearing related to his employment" ten years earlier.

These facts alone underlie the State's position that Fusco's prior representation of Lt. Mos, and "the representation of the union itself, which in turn represents or has represented each of these Newark Police witnesses[,]" constitutes an actual conflict of interest or at least an appearance of impropriety. It is noted the State did not provide a certification from Lt.

Mos detailing the nature of Fusco's prior representation or addressing his position on Fusco's representation of defendant.

Fusco filed a responsive certification, which confirmed he was under contract with the FOP "to represent member police officers in administrative, civil and criminal matters which arose out of their duties as police officers." Further, he acknowledged he had been "retained by the []FOP as legal counsel to render advice to the []FOP Board of Trustees[;]" he "regularly speak[s] at the []FOP State Convention[;] and [he] author[ed] articles for their newsletter[]"; however, he was not designated counsel and officers were free to retain any attorney they chose. Fusco also admitted he represented "Lt. Mos in a Newark Departmental disciplinary hearing," probably when he was a patrol officer. However, he had no personal recollection of the matter, the file was not in the firm's current computer system, and being over ten years old, it was presumably in storage. Defendant also filed a certification waiving any alleged conflict Fusco and the firm might have because of the prior representation of Lt. Mos.

On January 14, 2015, without benefit of oral argument, the motion judge issued a written opinion granting the State's motion. The judge reasoned defendant faced a "significant risk" his defense would "be materially limited when Fusco" or another

attorney from his firm was required to cross-examine Lt. Mos. because Fusco had access to information regarding Lt. Mos "through past recollection of the prior case file," which he would be precluded from using. Consequently, to avoid violating RPC 1.7(a)(2) and RPC 1.9(c), Fusco would engage in a "more cautious cross-examination than would otherwise be warranted."

Also, although noting the appearance of impropriety standard was removed from the RPCs following the 2004 amendments, the judge nevertheless found the doctrine remained "a consideration when examining a conflict of interest." He concluded, despite the uncertainty of whether Lt. Mos was a "key witness," the State's identification of him as a possible witness was sufficient to lead the public to perceive:

> (1) Lieutenant Mos unfairly aided Defendant in order to ingratiate himself with Mr. Fusco in case he ever needs Mr. Fusco's legal services again; (2) that Mr. Fusco or the attorney from his firm appearing at trial did not vigorously cross-examine Lieutenant Mos; or (3) that Mr. Fusco or his associate would use confidential information from his earlier representation of Lieutenant Mos during Lieutenant Mos's cross-examination, such as information regarding prior bad acts. See [State v.] Needham, 298 N.J. Super. [100,] 104-07 [(Law Div. 1996)]. This appearance of impropriety presents "a substantial risk of disservice to the public interest," as it will both undermine the integrity of the Court and provide a potential avenue for attacks on the fairness of this case. See [State v.]

6                                          A-2943-14T4

> Davis, 366 N.J. Super. [30,] 38, 42-43 [(App. Div. 2004)].

Defendant requested leave to appeal from the January 14, 2015 order directing Fusco's disqualification. We granted interlocutory review.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). See also State v. Bruno, 323 N.J. Super. 322, 331-32 (App. Div. 1999). "Where . . . the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw," reviewing courts do not "defer to the trial judge's findings" or ultimate decision. Bruno, supra, 323 N.J. Super. at 331. The burden rests with the State to demonstrate a disqualifying conflict exists. See State v. Morelli, 152 N.J. Super. 67, 70-71 (App. Div. 1977).

Consideration of this issue starts with a recognition of a criminal defendant's right secured by the Sixth Amendment of the United States Constitution "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This fundamental right must be protected. State v. Coon, 314 N.J. Super. 426, 432-33 (App. Div.), certif. denied, 157 N.J. 543 (1998). Additionally, United States Supreme Court jurisprudence has solidified the principle that a non-indigent defendant's Sixth

Amendment right to counsel encompasses the right to be represented by the counsel of his choosing, as the Sixth Amendment "commands . . . that the accused be defended by the counsel he believes to be best." United States v. Gonzalez-Lopez, 548 U.S. 140, 146, 126 S. Ct. 2557, 2562, 165 L. Ed. 2d 409, 418 (2006). New Jersey's Constitution equally recognizes a defendant's right to obtain counsel of his or her choosing. N.J. Const. art. I, ¶ 10. See also State v. Kates, 426 N.J. Super. 32, 43 (App. Div. 2012), aff'd, 216 N.J. 393 (2014).

> Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants . . . .
>
> [Gonzalez-Lopez, supra, 548 U.S. at 148, 126 S. Ct. at 2563, 165 L. Ed. 2d at 419.]

While the right to have counsel is resolute, a non-indigent criminal defendant is not guaranteed his or her choice of any lawyer. Certainly, the terms of the relationship must be agreed between attorney and client. State v. Jimenez, 175 N.J. 475, 484 (2003). More important, the scope of an attorney's representation remains restricted by the RPCs. Ibid. Accordingly, "[a] defendant's right to choose counsel is also circumscribed by the court's power to guard against conflicts of

interest, and to vindicate the court's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Kates, supra, 426 N.J. Super. at 45 (quoting Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692, 1698, 100 L. Ed. 2d 140, 149 (1988)). This squares with the principle that a defendant's Sixth Amendment right to effective assistance of counsel mandates counsel provide both adequate and conflict-free representation. United States v. Moscony, 927 F.2d 742, 748 (3d Cir.), cert. denied, 501 U.S. 1211, 111 S. Ct. 2812, 115 L. Ed. 2d 984 (1991). Thus, "[a] defense attorney's representation must be untrammeled and unimpaired, his loyalty undivided." State v. Bellucci, 81 N.J. 531, 538 (1980) (citation omitted). See also State v. Cottle, 194 N.J. 449, 463-64 (2008) ("With so much on the line . . . . [a]n attorney should never place himself in the position of serving . . . an interest in conflict with his client's interest."); State ex rel. S.G., 175 N.J. 132, 139 (2003) ("In criminal matters, in which the trust between attorney and client has enhanced importance, special vigilance is required because an attorney's divided loyalty can undermine a defendant's Sixth Amendment right to effective assistance of counsel.").

Courts have examined allegations of conflict of interest and appearance of impropriety arising from counsel's representation of current and former clients. In <u>State v. Galati</u>, 64 <u>N.J.</u> 572 (1974), a case decided prior to the adoption of the current <u>RPC</u>s, the State sought to disqualify privately retained defense counsel, alleging he, as the attorney for the Policemen's Benevolent Association, Local No. 75 (PBA), had a conflict of interest, and his representation evoked the appearance of impropriety because counsel maintained a close professional relationship with the PBA organization and its members. <u>Id.</u> at 573-74. The State had called before the Grand Jury, and also intended to call at trial, the defendant's patrol partner, a member of the same PBA lodge as the defendant, which was the same lodge counsel represented. <u>Id.</u> at 573.

Noting a detailed factual analysis was essential when determining whether particular conduct constituted the appearance of impropriety, the Court reasoned:

> when the lawyer of a PBA chapter consults periodically and intimately with its membership for the legislative, economic and other well-being of the organization and its members, he acquires, or is generally believed to acquire a special status, a relationship, a bridge of confidentiality and trust which sets him apart from other lawyers.
>
> . . . .

So . . . when the PBA's lawyer undertakes the representation of a private cause in which a member of that same PBA is destined to testify (on one side or another) there is bound to occur a public suspicion that the PBA witness will be inclined to palliate or vivify his testimony in order to accommodate the lawyer who, outside the courtroom, is en rapport with and supportive of the private and organizational interest of the PBA witness.

And should the public so believe, and thus suspect the outcome of the litigation proceeded from undue influence upon the policeman's testimony, and not from the merits, there is a sure result. The doubts thus engendered or suspicions aroused ("these fellows all stick together") impoverish the appearance of justice and taint the image of law and its even-handed enforcement.

[Id. at 575-76.]

The Court "appreciate[d] that the views expressed . . . will preclude a PBA attorney in the future from all representations in which an officer from the same PBA chapter will be called to testify. The sacrifice thus called for seems necessary to the appearance and substance of justice and good government." Id. at 578. Despite noting a possible appearance of impropriety, the Court found no actual impropriety occurred and reversed the trial judge's order of disqualification, noting the circumstances presented were unique and both parties had equal access to the proposed witness. Id. at 578-79.

After the formal adoption of the RPCs in 1984, the standard set forth in then RPC 1.7(c) and RPC 1.9 remained clear:

> Attorneys [were] disqualified from representing clients not only in cases of actual conflict, but also when representation begets an appearance of impropriety. Thus, multiple representation [was] impermissible "in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients."
>
> [In re Inquiry to Advisory Comm. on Prof'l Ethics Etc, 130 N.J. 431, 433 (1992) (quoting RPC 1.7(c)(2)).[2]]

---

[2]   Prior to amendments to the RPCs in 2004, RPC 1.7(c)(2), which governs simultaneous representations of clients, stated:

> This rule shall not alter the effect of case law or ethics opinions to the effect that:
>
> . . . .
>
> (2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

With respect to representing former clients, the original version of RPC 1.9(b) stated "[t]he provisions of RPC 1.7(c) are applicable as well to situations covered by this rule."

In State v. Bruno, the State advanced a disqualification argument challenging counsel and his firm's representation of the defendant who retained him because the State's lead detective in the criminal investigation had previously hired a member of the firm to represent him in a civil rights and worker's compensation matter. Bruno, supra, 323 N.J. Super. at 324-25. The detective would not consent to counsel's representation arguing he intended to request the firm file an action reopening his claim. Id. at 328.

After a thorough analysis of the facts of counsel's prior representation, the trial judge rejected the State's argument contending representation of the defendant constituted a conflict of interest and created an appearance of impropriety. Id. at 325. Following our plenary review, we agreed. Ibid. We determined the evidence supported the detective was a former and not a current client of the firm, no actual conflict in counsel's former and current representations existed, and the firm's prior representation of the detective was limited in scope and, therefore, not subject to the same types of risk of gaining confidential information during that representation, which could be used to the detective's detriment during cross-examination were he to testify in the defendant's criminal case. Id. at 334, 337. Finally, we held an "informed citizen with

full knowledge of the facts would conclude that there is no 'high risk' of impropriety here" and there is no "reasonable basis" to conclude "these facts create an appearance of impropriety." Id. at 337-38. But see State v. Needham, 298 N.J. Super. 100, 102, 105-07 (Law Div. 1996) (disqualifying counsel from representing the defendant because of the appearance of impropriety as he had previously represented the chief prosecution witness in an unrelated criminal matter).

Several other cases examine the propriety of granting the State's request for a mistrial because of defense counsel's dual representation, invoking the appearance of impropriety standard. See State v. Loyal, 164 N.J. 418, 421, 440 (2000) (upholding entry of mistrial based on the appearance of impropriety where the defendant's lawyer, a public defender, previously represented the State's key witness on an unrelated charge although the witness recanted her previous identification of the defendant); State v. Catanoso, 222 N.J. Super. 641, 647-48 (Law Div. 1987) (finding the appearance of impropriety doctrine and an actual conflict disqualified the defense attorney who previously acted as special counsel for a corporate co-defendant, with whom the State's key witness was associated, for fear the attorney would disclose, on cross-examination, confidences learned).

For three decades following <u>Galati</u>, the Court, when examining cases of dual representation, steadfastly emphasized counsel clearly must avoid impropriety and insisted "'even the appearance of impropriety' that casts doubt upon the integrity of the criminal process must be avoided." <u>In re Milita</u>, 99 <u>N.J.</u> 336, 342 (1985) (quoting <u>Galati</u>, <u>supra</u>, 64 <u>N.J.</u> at 576). The basis of this proscription was the "overriding concern . . . for maintaining public confidence in the integrity of the legal profession" because "appearances can be as important as reality." <u>Inquiry to Advisory Comm.</u>, <u>supra</u>, 130 <u>N.J.</u> at 434 (citing <u>Galati</u>, <u>supra</u>, 64 <u>N.J.</u> at 576). <u>See also</u> <u>In re Petition for Review of Op. No. 569 of Advisory Comm. on Prof'l Ethics</u>, 103 <u>N.J.</u> 325, 330 n.4 (1986) ("New Jersey remains one of the few states to adhere to the 'appearance of impropriety' rule. We have previously noted our disagreement with the ABA's narrower 'approach to disqualification.'") (quoting <u>In re Advisory Op. on Prof'l Ethics No. 361</u>, 77 <u>N.J.</u> 199, 206-07 (1978)).

A sea change occurred in 2004, when the <u>RPC</u>s were amended to eliminate the "appearance of impropriety" provisions from all <u>RPC</u>s, including <u>RPC</u> 1.7(c) and <u>RPC</u> 1.9(c). <u>See</u> Supreme Court of New Jersey, "Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct" (Sept. 10, 2003); Kevin H.

Michels, <u>New Jersey Attorney Ethics--The Law of New Jersey Lawyering</u>, § 18:1 at 383 (Gann 2015). For a period following the adoption of the 2004 amendments, an "offhand comment" by the Pollock Commission,[3] stating, "a court may properly consider the appearance of impropriety as a factor in determining that multiple representation poses an unwarranted risk of disservice . . . to the interest of the client[,]" created a confusion regarding the continued viability of the doctrine, despite the modification of the <u>RPC</u>s. Michels, <u>supra</u>, § 18:2 at 384-85. However, in 2006, the New Jersey Supreme Court ultimately declared the use of the appearance of impropriety doctrine moribund by stating: "[W]e hold that the 'appearance of impropriety' standard no longer retains any continued validity

---

[3]    In 2001,

> the Supreme Court created a Commission to review New Jersey's <u>R.P.C.</u>s in light of the changes to the Model Rules made by the ABA's "Ethics 2000" Commission. New Jersey's Commission, chaired by retired Justice Stewart Pollock and known as the Pollock Commission, responded in 2002 with suggested revisions to New Jersey's <u>R.P.C.</u>s . . . . After a comment period and a public hearing, the Supreme Court adopted extensive amendments to the <u>R.P.C.</u>s and the Court Rules in November of 2003, to be effective on January 1, 2004.
>
> [<u>Ethics Op. No. 697</u>, <u>supra</u>, 188 <u>N.J.</u> at 554 (quoting Michels, <u>supra</u>, § 1:2-1 at 5).]

in respect of attorney discipline." Ethics Op. No. 697, supra, 188 N.J. at 568. The Court emphasized the doctrine is not a factor to be considered in determining whether a prohibited conflict of interest exists under RPC 1.7, 1.8 or 1.9 as its use "injects an unneeded element of confusion[.]" Id. at 562 n.5.

To the extent the conclusion in Galati was based on an appearance of impropriety analysis, it conflicts with the Court's direction, declaring the amorphous and impractical appearance of impropriety doctrine may not serve as a basis to disqualify counsel because of a perceived conflict of interest. Disqualification must be based on an actual conflict or potential conflict of interest, as now defined by the RPCs.

RPC 1.7(a) proscribes the simultaneous representation of clients, if the representation would be directly adverse to another client, stating in pertinent part:

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

RPC 1.7(b) allows affected clients to provide informed written consent if "the lawyer reasonably believes that [he/she]" can provide the impacted clients "competent and diligent

representation"; "the representation is not prohibited by law"; and the affected clients are not adverse parties in the same litigation.

Ethical responsibilities stemming from the representation of a former client in the course of representing a current client is governed by RPC 1.9. Subsection (c) addresses when a current representation may conflict with a former client's interests, providing:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Finally, RPC 1.10(a) pertains to the imputation of conflicts of interest to others, stating:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

A-2943-14T4

Turning to the facts presented in this matter, the trial judge found Fusco's role as an attorney for the FOP was not a basis to require disqualification. Rather, disqualification was triggered by "an actual conflict of interest and an appearance of impropriety."

In concluding the facts showed an actual conflict of interest, the judge assumed Lt. Mos would testify at defendant's trial and Fusco's prior representation of Lt. Mos provided him access to private information, which could not be used or might impinge a vigorous cross-examination. These findings are not supported by the record.

First, we agree with defendant that Lt. Mos is not a key or essential State witness based on his disclosed involvement. He did not respond to the victim's call for aid, arrest or Mirandize defendant, or actively participate during defendant's videotaped interrogation. The facts strongly suggest Lt. Mos' role in the State's case was merely tangential, as his participation appears far less significant than the role played by the officer in Bruno. Where it is likely Lt. Mos will not be called at trial because of his limited role in this matter, it would be improper for the State to seek disqualification merely as a strategic maneuver.

Second, the absence of a certification from Lt. Mos speaks volumes. His silence along with Fusco's inability to recall the nature of the prior matter creates a void; no facts show an actual conflict exists based on Fusco's prior representation. All we are told is Fusco represented Lt. Mos in a disciplinary matter when he was a patrolman more than ten years ago. The age of the prior matter and that Lt. Mos had not engaged Fusco since do not support a current relationship. Rather, the facts show the attorney-client relationship ended many years ago.

Third, the nature of the prior representation must be examined. Prior representation, in and of itself, is not sufficient to justify disqualification. See Bruno, supra, 323 N.J. Super. at 338. Fusco's counsel to Lt. Mos was related to a departmental disciplinary proceeding. Disciplinary matters range from tardiness or paperwork flaws to significant breaches of police policies or violations of the law. See Oches v. Twp. of Middletown Police Dep't, 155 N.J. 1, 10 (1998) (noting existence of police disciplinary charges for "absenteeism, tardiness, conduct unbecoming a police officer, or other off-duty conduct that is unrelated to the performance of official duties"). The absence of factual underpinnings describing the prior representation makes it impossible to determine whether Fusco's role created "a significant risk" that his

representation of defendant "will be materially limited" due to responsibilities owed to Lt. Mos under RPC 1.9(c)(2), or whether Fusco obtained knowledge from Lt. Mos which might aid defendant that he would be prohibited from utilizing. RPC 1.9(c)(1). The assumption Fusco's prior representation would limit cross-examination because of ethical proscriptions against "reveal[ing] information relating to the representation" or the "use [of] information relating to the representation to the disadvantage of the former client" are unfounded. RPC 1.9. The prior relationship may well have revealed no relevant information with the potential to undermine Lt. Mos' testimony.

The State's reliance on Reardon v. Marlayne, Inc., 83 N.J. 460, 473 (1980), is misplaced. In Reardon, the Court held: "Where such substantially related matters are present or when a reasonable perception of impropriety exists, the court will assume that confidential information has passed between attorney and former client, notwithstanding the attorney's declarations to the contrary. The presumption of access to and knowledge of confidences may not be rebutted." Ibid. (emphasis added). Lt. Mos and defendant's matters are not substantially related. Thus, the stated presumption does not arise and we cannot conclude, as the judge did, Fusco obtained confidential

information by the mere fact he long ago represented Lt. Mos in a matter the facts of which no one recalls.

The judge mistakenly concluded the appearance of impropriety doctrine remained pertinent based on dicta found in in <u>Davis</u>, <u>supra</u>, 366 <u>N.J. Super.</u> at 44. When analyzing conflict assertions, the Court has clearly rejected the doctrine, stating: "In light of the 2004 amendments to the <u>Rules of Professional Conduct</u> that eliminated New Jersey's long-standing prohibition against the appearance of impropriety . . . we hold that the appearance of impropriety standard no longer retains any continued validity." <u>Ethics Op. No. 697</u>, <u>supra</u>, 188 <u>N.J.</u> at 552. Conflicts must be actual and not merely appearance based.

On remand, the judge must conduct a detailed review, thoroughly examining the facts surrounding the prior representation and determine whether Fusco's prior representation on behalf of Lt. Mos was limited in scope or created an actual conflict with his representation of defendant. Pertinent to this inquiry are findings on whether the nature of the legal representation support a finding Fusco gained confidential information during the representation of Lt. Mos, which could be used to Lt. Mos' detriment during cross-examination were he to testify in the defendant's criminal case. <u>See</u> <u>Bruno</u>, <u>supra</u>, 323 <u>N.J. Super.</u> at 333-34. This examination

must also consider the likelihood Lt. Mos will be called at trial, noting the limited extent of his involvement in the criminal investigation. The State bears the burden of proving the facts supporting disqualification; the mere proffer of a witness who will not be called at trial may not be a basis to disqualify counsel.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2943-14T4