**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0592-20

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

DAWAN INGRAM,

     Defendant-Respondent.

_____

> Argued March 16, 2021 – Decided April 1, 2021
>
> Before Judges Haas and Natali.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-03-0827.
>
> Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).
>
> Alison Perrone, First Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Alison Perrone, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from the Law Division's September 28, 2020 order, which denied its motion to disqualify Andrew Burroughs, Esq., an attorney assigned by the Office of the Public Defender (OPD), from representing defendant in connection with his petition for post-conviction relief (PCR). The State asserted that Burroughs was barred from serving as defendant's designated attorney under RPC 1.9(a) because Burroughs had previously worked as an assistant prosecutor on the case that led to the same convictions from which he was now seeking PCR on defendant's behalf.

After considering this contention in light of the record and the applicable law, we agree that RPC 1.9(a) clearly prohibits Burroughs from representing defendant on his PCR petition. Therefore, we reverse the September 28, 2020 order and remand for further proceedings.

I.

By way of background, RPC 1.9(a) addresses a lawyer's duties to former clients and states:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the

A-0592-20

former client unless the former client gives informed consent confirmed in writing.[1]

As our Supreme Court stated in its seminal decision interpreting this Rule:

> In clear language, RPC 1.9(a) begins with a prohibition that precludes an attorney from engaging in the representation of an adverse client in the same matter unless the former client consents in writing. RPC 1.9(a). Therefore, if the prior and subsequent matters are indeed the same, the representation, absent written consent of the former client, is prohibited.
>
> [Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 275-76 (2012).]

In strictly interpreting the terms of this Rule, the Supreme Court also stated:

> We recognize that a client's right to be represented by counsel of [his] choosing is an important one to be both cherished and protected. We also reiterate, however, that the right is not unfettered, but is one that can only be appropriately exercised in careful compliance with the [Rules of Professional Conduct] that govern attorneys and that serve to protect the legitimate interests of their former clients. In particular, the clear proscription included in RPC 1.9(a) against undertaking representation, in the same matter, of a client whose interests are materially adverse to a previously-represented client requires that the motion to disqualify be granted.
>
> [Id. at 279 (emphasis added).]

---

[1] RPC 1.9(d) further provides that "[a] public entity cannot consent to a representation otherwise prohibited by this Rule."

3

## II.

The facts underlying Burroughs' past work with the State on the trial that resulted in defendant's convictions, and his subsequent attempt to serve as defendant's PCR attorney in a challenge to those convictions, are not in dispute. We address each stage of the litigation in turn.

### A.

In March 2014, an Essex County grand jury charged defendant in a three-count indictment with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). State v. Ingram, No. A-0463-16 (App. Div. Apr. 12, 2019) (slip op. at 1, 5), certif. denied, 240 N.J. 12 (2019).

Defendant was tried before a jury in a trial that took much of the month of June 2016 to complete. Sometime before the proceedings began on the morning of June 22, 2016, which was the day before the State rested its case in chief, the trial judge received a telephone call from Juror No. 1. The juror explained that the county prosecutor's office had executed a search warrant at her home earlier that morning in connection with a criminal investigation of her

A-0592-20

adult son. When no one immediately answered the door at the juror's house, the officers "ma[d]e [a] forceful entry" of the residence.

When the attorneys for both sides later arrived in court, the judge advised them of the call and stated that "[t]he police were kind enough to drop [the juror] off and she is now downstairs." After some discussion, the judge and the parties agreed they should question the juror.

The judge called Juror No. 1 to the courtroom. After asking the juror to confirm the nature of the search warrant that had been executed at her home, the judge inquired as to whether the fact that the State "is the person [sic] bringing [that] matter forward, would . . . in any way, interfere with your ability to be fair and impartial in this case." The juror replied, "[n]o."

Roger Imhof, Esq., the assistant prosecutor for the State, then asked the juror if she would "be able to focus on the trial" as the result of what had happened that morning. The juror answered, "I honestly don't know." The juror also explained that the matter involving her son would "[p]robably" be "weighing on her mind . . . ." In response to questions posed by defendant's attorney, the juror stated that although the incident with her son would not "impact upon [her] ability to be fair and impartial in this case[,]" she "honestly

5

[did not] know" whether it would "impede [her] ability to concentrate on what's going on" during the trial.

The judge asked Juror No. 1 to leave the courtroom. At that point, Imhof expressed concern that the juror would be too distracted by her son's case to concentrate on the issues involved in defendant's trial. At the same time, he acknowledged that the juror stated she could be "fair and impartial to the State." As an alternative to excusing the juror for cause, Imhof suggested that the judge immediately designate Juror No. 1 as the alternate juror rather than waiting to make that determination at the end of the trial.[2] That way, according to the prosecutor, the parties would not have to worry if the juror would be distracted since she would only serve on the jury during its deliberations if one of the remaining jurors needed to be excused. If that occurred, Imhof proposed that the court and parties voir dire the juror again to ensure she had paid attention to the testimony and remained impartial.

The judge suggested that she and the attorneys "do some legal research to see if we can make that understanding, as to whether she would be the alternate."

---

[2] Although the record is not absolutely clear on this point, it appears there were thirteen jurors remaining on the trial panel at that point.

A-0592-20

In response, Imhof told the judge that he could research the issue "and have Appellate[3] do some research for your Honor . . . ."

Defendant's attorney agreed that Juror No. 1 should be retained, but she did not concur with Imhof's suggestion that the judge prematurely designate the juror as an alternate. After stating that she "still need[ed] some research[,]" the judge asked Imhof "if [he] could, you know, get [his] Appellate section to look at it" and she would ask her law clerk to do the same. When it became clear that defendant's attorney was not going to consent to Imhof's proposal, he stated that the judge should excuse Juror No. 1 from the case. However, the judge prevailed upon the parties to research the issue before making any final requests concerning the juror's status on the jury.

At that point, the judge brought Juror No. 1 back into the courtroom and asked her to let the court know if things became "too much" for her during the trial for her to remain as a fair and impartial juror. The juror agreed to do so.

Burroughs worked as an assistant prosecutor in the appellate unit of the Essex County Prosecutor's Office. As part of his duties, Burroughs regularly

---

[3] By "Appellate," Imhof was referring to his office's appellate unit, in which Burroughs worked as an assistant prosecutor.

A-0592-20

provided research assistance and guidance to his trial team colleagues on issues arising during the course of the office's prosecutions.

Sometime during the lunch break, Imhof spoke to Burroughs about the issues involving Juror No. 1. At 1:50 p.m., after the trial had resumed for the afternoon, Burroughs sent an email to Imhof concerning his request for an opinion on the question presented by Juror No. 1's encounter with the prosecutor's office earlier that day. Although the email did not refer to the defendant's case by name,[4] it specifically mentioned Juror No. 1 and the equivocal responses she had given during the voir dire. In the email, Burroughs told Imhof:

> Question:   Does a trial court have the discretion to <u>sua sponte</u> designate a juror as an alternat[e] rather than use the random process procedure expressed in <u>Rule</u> 1:8-2(d)(1).
>
> Answer:    No[.] [T]rial court does not have that discretion under <u>Rule</u> 1:8-2(d)(1), which provides "If more than such number are left on the jury at the conclusion of the court's charge, the clerk of the court in the jury's presence <u>shall</u> randomly draw such number of names as will reduce the jury to the number required to determine the issues."
>
> <u>As we discussed in your case</u>, Juror 1 appears equivocal about whether she can focus on the trial. This apparent equivocation should be resolved and placed on the

---

[4] The email was captioned "juror alternate selection."

record through proper voir dire. If the juror continues to express equivocation, the court should excuse her from further service in this case.

[(Emphasis added).]

Burroughs' opinion was not acknowledged or addressed by the attorneys or the judge on June 22 and, therefore, it appears that Imhof did not review his colleague's email until after the trial ended for the day. In this regard, the judge reminded the attorneys to "look up the issue that we started with this morning" after she excused the jurors at the conclusion of that afternoon's testimony.

Before the jury was summoned to the courtroom the next day, Imhof reported that "we did some research on the jury issue." After briefly recapping what had transpired the previous morning, Imhof provided the court with the substance of Burroughs' legal opinion, and stated:

> I think we should again voir dire [Juror No. 1] . . . see how she's doing, . . . where her mind is. And again, Judge, at this point if she says that she's equivocal, she's unsure how she could stay focused, then I'd ask that she be removed Judge, and we go with the [twelve remaining jurors].
>
> We're at the end of the trial. But I don't think we could take a chance and I think even if the defense wants her, I don't think it's something that [the] defense can waive. I think a reviewing court, Appellate Court, would say that the [trial] [c]ourt, on its own should have su[a] sponte removed the juror based on what happened.

9

In response, defendant's attorney asserted that the judge had appropriately instructed the juror to let the court know if she felt she was having any difficulties maintaining her concentration. Because the juror had not done so, defense counsel argued there was no need to remove the juror from the panel.

The judge then had Juror No. 1 come to the courtroom. In response to two questions posed by the judge, the juror affirmed she would "continue to listen wholeheartedly to the . . . case" and would be able to "decide this case by being fair and impartial." Imhof and defendant's attorney did not ask any follow-up questions. The judge then called the remaining jurors into the courtroom and the trial continued.

At the conclusion of the trial, Juror No. 1 was designated as the jury's foreperson. After its deliberations, the jury convicted defendant of all three charges. Ingram, (slip op. at 1). After appropriate mergers, the judge sentenced defendant to an aggregate fifty-year term in prison, with an 85% parole ineligibility term pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Id. at 5.

## B.

Defendant filed a direct appeal challenging his convictions and sentence. Id. at 5-6. Burroughs did not participate on either side in this stage of the

A-0592-20

proceedings, although the incident regarding Juror No. 1 that had been the subject of the advice he provided to the trial team was one of the issues defendant raised in this part of his case.

In this regard, defendant argued for the first time on appeal that "the trial court erred by not giving curative instructions after two juror irregularities" occurred at trial, including the incident involving Juror No. 1.  Id. at 13.  He also asserted that his trial attorney provided him with ineffective assistance.  Ibid.

We determined that both of these contentions lacked merit.  Ibid.  Addressing defendant's argument regarding the judge's handling of Juror No. 1, we stated:

> During the trial, Juror [No. 1] informed the judge the Essex County Prosecutor's Office executed a search warrant at her . . . house in an unrelated case.  She said this would not affect her ability to be impartial but added the search was a surprise to her, and she was unsure whether it would decrease her focus on the trial.  After a discussion with counsel, the trial court did not dismiss Juror [No. 1] but instructed her to let the court know if her concentration was diminished.
>
> [Id. at 14.]

In his direct appeal, defendant argued that the judge should have given an additional curative instruction.  Id. at 14-15.  In rejecting this argument, we concluded that because "Juror [No. 1] was instructed to inform the court if she

11

felt she could not continue, and she felt she could continue to be impartial[,] [n]o further curative steps were necessary." Id. at 15.

We did not address the merits of defendant's argument that his trial attorney failed to provide him with effective assistance because defendant did "not offer a reason why his trial counsel's performance fell below an acceptable standard." Id. at 18. Thus, we were not able to "review [defendant's] claim" on this point at the time of his direct appeal. Ibid.

We rejected defendant's remaining contentions and affirmed his convictions and fifty-year aggregate sentence. However, we remanded the matter to the trial court to address a mistake made in the assessment of a monetary penalty. Id. at 19-20.

C.

We now turn to the next chapter in the parties' ongoing litigation. In November 2019, defendant filed a timely petition for PCR. By this time, Burroughs was no longer working as an assistant prosecutor in the Essex County Prosecutor's Office, and he was now doing criminal defense work. The OPD sometimes assigned Burroughs to represent indigent defendants in criminal matters.

A-0592-20

The OPD assigned Burroughs to represent defendant in connection with his PCR petition. Burroughs asserts he did not recall his involvement in the criminal trial that led to defendant's convictions at that time. He entered a notice of appearance as defendant's designated counsel on May 22, 2020.

Two months later, on July 28, 2020, Burroughs filed a brief in support of defendant's petition with the trial court. He also emailed a copy of his brief to Imhof and another assistant prosecutor. Later that day, Imhof pulled his file on the case and found the opinion that Burroughs had prepared during defendant's trial on the issue involving Juror No. 1.

The next day, Imhof sent an email to Burroughs enclosing a copy of Burroughs' June 22, 2016 opinion. Imhof reminded Burroughs that he had worked on defendant's case while he was employed by the Essex County Prosecutor's Office and that he was not permitted to represent defendant in the PCR proceeding under RPC 1.9.

Burroughs responded by email and advised Imhof that he did not believe he had a conflict because his involvement at the trial "was limited to [a] very narrow question of law that could apply to any case that [he] was asked about while at the prosecutor's office." Burroughs also asserted that his "recusal at

13

this point would deny [defendant] his Sixth Amendment right to choice of counsel."

The State then filed a motion to disqualify Burroughs as defendant's attorney and the matter was assigned to the same judge who had presided at defendant's murder trial. This judge was also responsible for addressing defendant's PCR petition. Burroughs opposed the State's motion.

Following oral argument, the judge rendered a short oral decision denying the State's motion to disqualify Burroughs pursuant to RPC 1.9. The judge recognized that she had asked Imhof to have the appellate unit in which Burroughs worked address the issue regarding Juror No. 1's participation on the jury. The judge also acknowledged that Burroughs provided advice to the trial team that was provided to the court on this issue. In addition, the judge stated that she based her decision not to designate Juror No. 1 as an alternate juror and to permit the juror to remain on the panel on the advice Burroughs conveyed through Imhof.

Nevertheless, the judge determined that Burroughs' representation was "fleeting"[5] and his opinion was conveyed in an email that was "not captioned by

---

[5] The judge also described Burroughs' participation in the murder trial as "temporal at best" and "rather de minimis."

the case name, [did] not identify the defendant, [and did not] discuss[] any substantive facts related to the case." The judge further noted that Burroughs stated he did not recall providing the advice that his employer relied on in addressing the issue before the trial court. Therefore, the judge ruled that Burroughs should not be disqualified from representing defendant in the PCR proceeding.

As a further reason for denying the State's motion, the judge stated that "defense counsel has invested significant time and competence as PCR counsel. The [OPD] has already expended significant funds, and would be obliged to expend further unnecessary expenditures during a State budget crisis, if it is required to engage . . . a new attorney." The judge also expressed concern that the State waited until after Burroughs submitted his PCR brief to file the disqualification motion and stated that "this motion would disrupt the attorney/client relationship that has developed between [defendant] and PCR counsel."

On October 29, 2020, we granted the State's motion for leave to appeal the judge's September 28, 2020 order denying its motion to disqualify Burroughs.

A-0592-20

III.

On appeal, the State argues that under the clear provisions of RPC 1.9(a), Burroughs was prohibited from representing defendant in his attempt to overturn the convictions that Burroughs had assisted in obtaining against defendant on behalf of the State. We agree.

Our standard of review is well settled. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." State v. Faulcon, 462 N.J. Super. 250, 254 (App. Div. 2020) (alteration in original) (quoting City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010)). "'Where . . . the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw,' reviewing courts do not 'defer to the trial judge's findings' or ultimate decision." State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015) (quoting State v. Bruno, 323 N.J. Super. 322, 331 (App. Div. 1999)). "The burden rests with the State to demonstrate a disqualifying conflict exists." Faulcon, 462 N.J. Super. 254 (quoting Hudson, 443 N.J. Super. at 282).

Applying this standard, it is clear that Burroughs may not represent defendant in his attempt to overturn his convictions. Burroughs served as an assistant prosecutor at defendant's trial and, during the course of that

employment, provided legal advice to his client concerning the proper handling of a juror issue that threatened to disrupt the trial just as it was nearing its conclusion. Because Burroughs was able to guide Imhof, his colleague on the trial team, along the correct path by dissuading him from seeking to have the juror prematurely designated as an alternate, the judge permitted the juror to remain on the panel, thus averting a possible mistrial at the trial level of the proceedings or an additional appellate issue.

Burroughs now seeks to switch sides in the next stage of this same case by becoming defendant's lawyer as he seeks to overturn the convictions through a petition for PCR. Defendant's interests in this chapter of the proceedings are certainly "materially adverse to the interests of the" State, which is Burroughs' former client. RPC 1.9(a). The State has not consented to this representation as required by RPC 1.9(a) and, indeed, it may not "consent to a representation otherwise prohibited by [that] Rule." RPC 1.9(d).

Accordingly, RPC 1.9(a)'s "plain prohibition of subsequent representation in the same matter" clearly bars Burroughs from acting as defendant's attorney as he attempts to obtain PCR from his convictions. Twenty-First Century Rail Corp., 210 N.J. at 276. Therefore, the trial judge erred by denying the State's motion to disqualify Burroughs.

A-0592-20

On behalf of defendant, the OPD argues that Burroughs did not truly represent the State at the trial stage of this case because Burroughs only addressed one "generic" question in a "fleeting" manner and did so in a memo that did not identify defendant's case by name or docket number. This argument lacks merit.

The question regarding the continued participation of Juror No. 1 was not a "de minimis," "fleeting," or "generic" issue. It diverted the court's and the parties' attention for a good part of the morning on the next to last day of the State's presentation. The issue was only able to be resolved the next day after Imhof reached out to Burroughs to conduct the research needed to address the question presented. Further demonstrating the importance of the issue, the judge asked that the prosecutor's appellate unit assist the court in evaluating Imhof's suggestion that she designate Juror No. 1 as an alternate.

The fact that Burroughs' memo did not identify defendant by name or his case by its docket number is of no moment. There is no dispute that Imhof discussed the case with Burroughs, who referenced that discussion and Juror No. 1 in the memo. Therefore, both Imhof and Burroughs knew what case Burroughs was addressing in his opinion.

A-0592-20

Contrary to the judge's oral decision, RPC 1.9(a) also does not impose a "temporal" requirement on an attorney's representation of a client. It may have only taken Burroughs fifteen minutes to research and resolve the issue posed to him by Imhof. However, there is no question that based on his work on this portion of the case, Burroughs clearly acted as an assistant prosecutor involved in the State's prosecution of defendant.

We also disagree with defendant's contention that the issue Burroughs addressed "was of no consequence" and "was not raised on defendant's [direct] appeal." As discussed above, the issue regarding Juror No. 1 threatened to impede, if not derail, the trial as it entered its final days. Because other jurors had already been excused, there were only thirteen jurors remaining. Therefore, a careful analysis of whether yet another juror should be removed from the panel was needed. Burroughs provided that evaluation and, as a result, the State, as Burroughs' client, was able to continue the trial and obtain convictions against defendant on all three counts of the indictment.

In addition, the incident involving Juror No. 1 was an issue during defendant's direct appeal. Defendant argued that the judge erred by failing to give additional curative instructions after she decided not to excuse the juror. Ingram, (slip op. at 13-15). Therefore, the question Burroughs addressed and

19

resolved for his client was certainly a consequential one for both defendant and the State.

The OPD also asserts on defendant's behalf that the State waived its ability to object to Burroughs' switch from the State's side to defendant's because it did not challenge Burroughs' participation until sixty-eight days after he filed defendant's PCR brief. We disagree.

When Burroughs filed his notice of appearance in May 2020, he did not remember that he had worked on this case while employed as an assistant prosecutor. Therefore, he did not seek the State's written consent to the representation as required by RPC 1.9(a). Twenty-First Century Rail Corp., 210 N.J. at 276. Thus, we cannot fault Imhof, who also stated he did not immediately recall Burroughs' participation, for not addressing the conflict when Burroughs submitted his notice of appearance. After Burroughs filed his brief on behalf of defendant on July 28, 2020, Imhof found Burroughs' June 2016 memo and sought Burroughs' voluntary recusal the very next day. Under these circumstances, we are satisfied that the State's objection was timely filed.

Moreover, the "waiver" cases cited by defendant are clearly distinguishable from this matter. For example, in Alexander v. Primerica Holdings, Inc., the District Court held that a party waived its ability to move to

20

disqualify counsel because it waited over three years to make its motion, which it filed on the eve of trial. 822 F. Supp. 1099, 1115-16 (D.N.J. 1993). Similarly, in Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1209 (E.D.P.A. 1992), the party seeking the disqualification waited two years to file it and then did so just a few weeks before the trial. Here, the State filed the motion to disqualify Burroughs one day after Imhof confirmed that his former colleague had assisted him in addressing the issue regarding Juror No. 1 in the trial that resulted in the convictions that Burroughs now seeks to overturn.

We also reject the assertion that the State waited until after it received Burroughs' brief in order to obtain a tactical advantage in the PCR portion of this long-running litigation and to impose an undue hardship upon defendant. While the OPD will have to appoint a different attorney for defendant, the arguments raised by Burroughs will certainly be subject to that attorney's review and possible presentation in a new brief. Although there will be a delay in the disposition of defendant's petition, it will be a relatively short one because Burroughs demonstrated that an attorney, with a caseload of other matters, could review the entire trial file and prepare a brief within a span of only two months.[6]

_____

[6] The brief Burroughs prepared challenging defendant's convictions is not a part of the record on appeal.

Moreover, defendant will not incur any financial hardship in this case. As an indigent OPD client, he will be assigned a new attorney at no cost or expense to him.[7]

Finally, Burroughs' disqualification will not deprive defendant of his "Sixth Amendment right to counsel[, which] encompasses the right to be represented by the counsel of his . . . choosing . . . ." Faulcon, 462 N.J. Super. at 254 (quoting Hudson, 443 N.J. Super. at 283). This is so because "[t]he right to choose counsel is circumscribed by the court's power to guard against conflicts of interest, and to vindicate the court's independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them." Ibid. (citations and internal quotation marks omitted).

"This squares with the principle that a defendant's Sixth Amendment right to effective assistance of counsel mandates counsel provide both adequate and conflict-free representation." Hudson, 443 N.J. Super. at 283-84 (citing United States v. Moscony, 927 F.2d 742, 748 (3d Cir. 1991)). Because Burroughs cannot provide this assistance to defendant in the face of the clear language of

---

[7] We again note that RPC 1.9(d) prohibits the prosecutor from consenting "to a representation otherwise prohibited by" RPC 1.9(a). Moreover, no "waiver" of the conflict was permissible.

A-0592-20

RPC 1.9(a), he must be disqualified. Twenty-First Century Rail Corp., 210 N.J. at 279.

In sum, we reverse the trial judge's September 28, 2020 order and disqualify Burroughs from further representation of defendant in this matter. We remand to the Law Division for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0592-20