**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

> SUPERIOR COURT OF NEW JERSEY
> APPELLATE DIVISION
> DOCKET NO. A-1891-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HABEEB ROBINSON,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 8, 2017

APPELLATE DIVISION

Argued January 31, 2017 — Decided  February 8, 2017

Before Judges Reisner, Koblitz and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Complaint-Warrant No. W20160256160714.

Elizabeth C. Jarit, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Jarit, of counsel and on the brief).

Frank J. DuCoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. DuCoat, of counsel and on the brief).

Claudia Joy Demitro, Deputy Attorney General, argued the cause for amicus curiae Attorney General (Christopher S. Porrino, Attorney General, attorney; Ms. Demitro, of counsel and on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (Mr. Shalom, Edward L. Barocas and Jeanne LoCicero, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

In this appeal, we address the scope of the discovery which the State must produce prior to a pretrial detention hearing held under the Bail Reform Act (Act), N.J.S.A. 2A:162-15 to -26. Rule 3:4-2(c)(1)(B), which was part of a comprehensive set of rule amendments adopted to implement the Act, provides:

> [I]f the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed.
>
> [R. 3:4-2(c)(1)(B).]

This appeal primarily focuses on the meaning of the phrase "relating to the pretrial detention application."[1]

In this case, defendant was arrested on January 4, 2017, and charged with murder based on an affidavit of probable cause reciting that two eyewitnesses saw defendant shoot the victim, and

---

[1] In this case, the State acknowledged its obligation to provide "[a]ll exculpatory evidence," Rule 3:4-2(c)(1)(B), and provided defense counsel with defendant's statement to the police. The "exculpatory evidence" provision is not at issue in this appeal and therefore the opinion will not address that requirement.

the witnesses identified defendant from a photo array. The Preliminary Law Enforcement Information Report (PLEIR)[2] also stated that the police had surveillance video footage relevant to the commission of the crime. The defense asked for those documents, and the State refused to provide them.

As a result, the January 10, 2017 pretrial detention hearing devolved into a dispute over discovery, with the State insisting that its discovery obligation was limited to producing the probable cause affidavit and the PLEIR. Judge Ronald D. Wigler rejected that argument. Instead, keying the State's discovery obligation to the evidence referenced in the probable cause affidavit and related information listed in the PLEIR, Judge Wigler required the prosecutor to produce as discovery the two eyewitness statements, the photo array, and the surveillance video listed in the PLEIR.

---

[2] In a comprehensive directive aimed at guiding law enforcement agencies to implement and comply with the Act, the Attorney General directed the creation of the PLEIR form, as a means by which law enforcement officers could quickly summarize the evidence in their possession. Att'y Gen. Law Enf't Directive No. 2016-6, Oct. 11, 2016. The PLEIR was intended to "succinctly describe[] the relevant factual circumstances pertaining to the offense for which the defendant was arrested and the basis for the arresting officer's belief that probable cause exists." Id. at 48. The PLEIR was also intended to "inform the prosecutor's decision whether to file a motion for pretrial detention." Ibid. On the face of the document, the PLEIR recites that it must accompany the probable cause affidavit and is deemed to be incorporated by reference into the affidavit.

He also ordered the State to turn over any initial police reports that related to the application.

We conclude that Judge Wigler correctly interpreted Rule 3: 4-2(c)(1)(B). The State's argument, which it repeats on this appeal, is contrary to the plain language and textual context of the rule, as well as its purpose. The State's contention is also directly contrary to the position it asserted before the Criminal Practice Committee - including the version of the rule the State advocated - during the Committee's comprehensive review of Court Rule amendments needed to implement the Act. The State's submissions were included in the Committee's report to the Supreme Court and thus became part of the legislative history of section (B) as adopted by the Court. See Rep. of the Sup. Ct. Comm. on Criminal Practice on Recommended Court Rules to Implement the Bail Reform Law, Part 1, Pretrial Release (May 9, 2016) (CPC Report).

We conclude that Judge Wigler correctly interpreted the rule as entitling a defendant to discovery of the factual materials on which the State bases its application for defendant's pretrial detention, and not merely the hearsay description of those materials set forth in the probable cause affidavit and the PLEIR.

We reject the State's contention that it need only produce the materials described in the affidavit if it says it relies on them. Clearly, the State relies on the affidavit to establish

4

probable cause, and therefore, the materials described by hearsay in the affidavit "relate" to the detention application. R. 3:4-2(c)(1)(B). Moreover, the trial court cannot be expected to ignore what is set forth in the probable cause affidavit in considering the weight of the State's evidence, N.J.S.A. 2A:162-20(a), and the defense cannot meaningfully respond to the application without seeing at least the most critical evidence supporting the State's allegations.

In this case, the State alleged that defendant committed a murder in view of two eyewitnesses and a surveillance camera. The State's probable cause affidavit turned on identification of defendant as the shooter, and thus the required discovery would be the materials "relating to" that aspect of the State's motion. R. 3:4-2(c)(1)(B). We agree with Judge Wigler that defendant was entitled to discover the statements of the two eyewitnesses; the photo array described in the probable cause affidavit as having been used in the identification process; the surveillance video; and the initial police reports of the crime. Accordingly, we affirm the January 10, 2017 discovery order.[3] We also vacate the

---

[3] We granted the State's motion for leave to appeal from the January 10, 2017 order. Defendant did not cross-move for leave to appeal from the order. We note that the order, which the prosecutor drafted, directs the State to produce the documents described above, plus any other discovery "related to" its application,

stay of the order that was entered pending appeal, and remand this case to the trial court to complete discovery and hold the detention hearing forthwith.[4]

Finally, we understand that, because of the expedited nature of the pretrial detention hearing process, all parties need clear guidance as to the State's discovery obligations. In particular, the State needs to know with some specificity what documents it must produce when it files its detention application, an event that will usually occur shortly after defendant's arrest. At oral argument, defendant and the amicus American Civil Liberties Union agreed that under the Rule, the State's initial discovery obligation is limited to the materials in the State's possession that are referenced in the probable cause affidavit and the related

_____

without listing those materials. The parties did not specify other documents to which the order applies. For future reference, if it is necessary for the court to order the State to produce discovery, the order should list with specificity the documents the State must produce.

[4] The probable cause affidavit stated that the witnesses were fearful, but the State did not apply to Judge Wigler for a protective order limiting discovery due to concerns for witness safety. At oral argument, in response to our inquiry about its underlying policy concerns, the State did not even mention the protection of witnesses. We infer that the State is aware of its right to apply for a protective order, in camera review of evidence, or other relief in a case that presents a genuine issue as to the protection of witnesses. See In re N.H., 226 N.J. 242, 256 (2016).

materials listed in the PLEIR.[5]  That is consistent with our interpretation of the <u>Rule</u>.

To be clear, if such materials are in the possession of the police, they are in the State's possession and the prosecutor must produce them.  <u>See</u> <u>State v. Womack</u>, 145 <u>N.J.</u> 576, 589, <u>cert. denied</u>, 519 <u>U.S.</u> 1011, 117 <u>S. Ct.</u> 517, 136 <u>L. Ed.</u> 2d 405 (1996); <u>State v. Mustaro</u>, 411 <u>N.J. Super.</u> 91, 102 (App. Div. 2009).  We expect that all parties will act cooperatively in implementing <u>Rule</u> 3:4-2(c)(1)(B), and that they will use available electronic communication methods to promptly produce and receive discovery. While there may be occasional glitches in producing discovery, those should be the exception rather than the rule, to avoid delaying the pretrial detention hearings and compromising the rights of defendants.

I

Because this is the first opinion to address an issue under the Bail Reform Act, it will be helpful to review the history and content of the Act to put the legal issues in context.

---

[5] At oral argument, the parties acknowledged that the trial court has discretion to order additional discovery.  That issue is not presented here, however, and we need not address it.

## The Constitutional Amendment and the Bail Reform Act

Effective January 1, 2017, the voters of New Jersey approved a constitutional amendment providing a right to pretrial release, but authorizing pretrial detention under certain limited circumstances, N.J. Const. art. I, ¶ 11:

> All persons shall, before conviction, be eligible for pretrial release. Pretrial release may be denied to a person if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process. It shall be lawful for the Legislature to establish by law procedures, terms, and conditions applicable to pretrial release and the denial thereof authorized under this provision.
>
> [N.J. Const. art. I, ¶ 11 (amended effective 2017).]

To meet this constitutional mandate, and its shift from a pretrial system based on the right to bail, New Jersey adopted a risk-based approach unrelated to a defendant's ability to pay. As codified by the Bail Reform Act, the new system favors pretrial release and monitoring as the presumptive approach and limits preventive detention to defendants who actually warrant it. By permitting judges to keep high-risk defendants detained without bail, and to release with or without conditions those defendants

who pose little risk of flight or of committing another offense, these constitutional and legislative changes represent a major reform to criminal justice that will promote public safety and fairness.

Historically, in New Jersey, individuals had a constitutional right to bail before trial in all criminal cases, "except for capital offenses when the proof is evident or the presumption great."  N.J. Const. art. I, ¶ 11; N.J. Const. of 1844 art. I, ¶ 10.  Although this fundamental right to bail was first incorporated into the New Jersey Constitution in 1844, it existed by statute prior to the 1776 Constitution.  State v. Johnson, 61 N.J. 351, 354 (1972) (citing Leaming & Spicer, Grants and Concessions of New Jersey, 1664-1702 235 (1881)).

The constitutional amendment approved by voters in November 2014 arose from the recognition that a sizable number of pretrial defendants stayed in jail before trial because of their inability to pay relatively small amounts of bail.  Pub. Hearing before Senate Law and Pub. Safety Comm., Senate Concurrent Resol. 128, at 2 (July 24, 2014),                http://www.njleg.state.nj.us/ legislativepub/pubhear/slp 07242014.pdf (Public Hearing).  The reliance on bail also led to the pretrial release of high-risk defendants without appropriate individual assessments.  Public

Hearing, supra, at 1-2. The 2014 constitutional amendment was intended to address these issues.

In 2014, the Legislature adopted a new law to take effect on the same day as the constitutional amendment. Effective on January 1, 2017, the Bail Reform Act established reforms for bail and other forms of pretrial release and for pretrial detention, established statutory speedy trial deadlines, and made other changes to court administration and court-related programs. See Statement to S. 946 (July 31, 2014).

The three-fold purpose of the Bail Reform Act is to primarily rely upon pretrial release by non-monetary means "to reasonably assure an eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, [and] that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-15. The Act further seeks to assure that "the eligible defendant will comply with all conditions of release, while authorizing the court, upon motion of a prosecutor, to order pretrial detention . . . when it finds clear and convincing evidence that no condition or combination of conditions can reasonably assure the effectuation of these goals." N.J.S.A. 2A:162-15. Under the statute, a court may set monetary bail "only when it is determined that no other conditions of release will reasonably assure the eligible

10                                          A-1891-16T2

defendant's appearance in court when required." N.J.S.A. 2A:162-15. For purposes of bail reform, an eligible defendant means "a person for whom a complaint-warrant is issued for an initial charge involving an indictable offense or a disorderly persons offense unless otherwise provided" in the statute. N.J.S.A. 2A:162-15.

The Bail Reform Act provides that an eligible defendant, following the issuance of a complaint-warrant, will be temporarily detained to allow the Pretrial Services Program (PSP) the opportunity to "prepare a risk assessment with recommendations on conditions of release." N.J.S.A. 2A:162-16(a); see N.J.S.A. 2A:162-25. The court must make a pretrial release decision "in no case later than 48 hours after the eligible defendant's commitment to jail." N.J.S.A. 2A:162-16(b)(1). The court may release a defendant on his or her own recognizance, or may order the pretrial release subject to certain conditions. N.J.S.A. 2A:162-17.

If the prosecutor makes a motion for pretrial detention, the eligible defendant must be detained in jail pending a pretrial detention hearing. N.J.S.A. 2A:162-18, -19. The hearing must be held no later than the defendant's first appearance, unless either the eligible defendant or the prosecutor seeks a continuance, or unless the prosecutor files the motion after the first appearance. N.J.S.A. 2A:162-19(d). Upon filing of the prosecutor's motion,

and during any continuance granted by the court, the eligible defendant must remain in jail. N.J.S.A. 2A:162-19(d)(2). If the eligible defendant was previously released from custody before trial, the court must issue a notice to compel his or her appearance at the hearing. N.J.S.A. 2A:162-19(d)(2).

At the pretrial detention hearing, the eligible defendant has the right to counsel and, if financially unable to obtain adequate representation, has the right to appointed counsel. N.J.S.A. 2A:162-19(e). The eligible defendant also has the right "to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." N.J.S.A. 2A:162-19(e)(1). At a hearing where there is no indictment, the prosecutor must "establish probable cause that the eligible defendant committed the predicate offense." N.J.S.A. 2A:162-19(e)(2). In reaching its decision, the court may consider certain information enumerated in N.J.S.A. 2A:162-20. A pretrial detention order must include "written findings of fact and a written statement of the reasons for the detention." N.J.S.A. 2A:162-21(a). "If the court enters an order that is contrary to a recommendation made in a risk assessment when determining a method of release or setting release conditions, the court shall provide an explanation in the document that authorizes the eligible defendant's release." N.J.S.A. 2A:162-23(a)(2).

12

When an eligible defendant is released from custody before trial, and upon motion of a prosecutor the court finds the defendant violated a restraining order or condition of release, or finds probable cause to believe the defendant committed a new crime while on release, it may not revoke the release and order the defendant detained unless, after considering all relevant circumstances, it "finds clear and convincing evidence that no monetary bail, non-monetary conditions of release or combination of monetary bail and conditions would reasonably assure" the three primary purposes of the Act. N.J.S.A. 2A:162-24.

The Bail Reform Act also directs courts to calculate speedy trial deadlines for eligible defendants who are subject to pretrial detention ordered by a court or who remain in jail pretrial due to the inability to post monetary bail imposed pursuant to the Act. N.J.S.A. 2A:162-22. Not counting excludable time for reasonable delays, an eligible defendant must not remain in jail for more than 90 days prior to the return of an indictment, or 180 days following the return or unsealing of the indictment and before the commencement of trial. N.J.S.A. 2A:162-22(a)(1), (a)(2). The Bail Reform Act identifies thirteen periods to exclude in computing the time in which a case must be indicted or tried. N.J.S.A. 2A:162-22(b).

<u>Detention Hearing Provisions in Greater Detail</u>

The Act, <u>N.J.S.A.</u> 2A:162-19(a), grants the State the right to file an application for pretrial detention when the State charges the defendant with the following crimes or offenses:

(1) any crime of the first or second degree enumerated under subsection d. of section 2 of <u>N.J.S.A.</u> 2C:43-7.2;

(2) any crime for which the eligible defendant would be subject to an ordinary or extended term of life imprisonment;

(3) any crime if the eligible defendant has been convicted of two or more offenses under paragraph (1) or (2) of this subsection;

(4) any crime enumerated under paragraph (2) of subsection b. of section 2 of <u>N.J.S.A.</u> 2C:7-2 or crime involving human trafficking pursuant to section 1 of <u>N.J.S.A.</u> 2C:13-8 or <u>N.J.S.A.</u> 52:17B-237 <u>et al.</u> when the victim is a minor, or the crime of endangering the welfare of a child under <u>N.J.S.A.</u> 2C:24-4;

(5) any crime enumerated under subsection c. of <u>N.J.S.A.</u> 2C:43-6;

(6) any crime or offense involving domestic violence as defined in subsection a. of section 3 of <u>N.J.S.A.</u> 2C:25-19; or

(7) any other crime for which the prosecutor believes there is a serious risk that:

(a) the eligible defendant will not appear in court as required;

(b) the eligible defendant will pose a danger to any other person or the community; or

(c) the eligible defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror.

At the hearing mandated by N.J.S.A. 2A:162-19(c), if the defendant has not yet been indicted, "the prosecutor shall establish probable cause that the eligible defendant committed the predicate offense." N.J.S.A. 2A:162-19(e)(2). If "the court finds probable cause that the eligible defendant" committed murder or a crime that would subject the defendant to life imprisonment, then

> there shall be a rebuttable presumption that the eligible defendant shall be detained pending trial because no amount of monetary bail, non-monetary condition or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process . . . .
>
> [N.J.S.A. 2A:162-19(b).]

The presumption of detention

> may be rebutted by proof provided by the eligible defendant, the prosecutor, or from other materials submitted to the court. The standard of proof for a rebuttal of the presumption of pretrial detention shall be a preponderance of the evidence. If proof cannot be established to rebut the presumption, the court may order the eligible defendant's pretrial detention. If the

presumption is rebutted by sufficient proof, the prosecutor shall have the opportunity to establish that the grounds for pretrial detention exist pursuant to this section.

[N.J.S.A. 2A:162-19(e)(2).]

In all cases, "[e]xcept when an eligible defendant has failed to rebut a presumption of pretrial detention pursuant to" N.J.S.A. 2A:162-19(b), "the court's finding to support an order of pretrial detention . . . shall be supported by clear and convincing evidence." N.J.S.A. 2A:162-19(e)(3). The court may reopen the hearing at any time if new and material evidence is discovered. N.J.S.A. 2A:162-19(f).

At the hearing, "the court may take into account" the following information, set forth in N.J.S.A. 2A:162-20:

a.  The nature and circumstances of the offense charged;

b.  The weight of the evidence against the eligible defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

c.  The history and characteristics of the eligible defendant, including:

(1)  the eligible defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(2) whether, at the time of the current offense or arrest, the eligible defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

d. The nature and seriousness of the danger to any other person or the community that would be posed by the eligible defendant's release, if applicable;

e. The nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the eligible defendant's release, if applicable; and

f. The release recommendation of the pretrial services program obtained using a risk assessment instrument under N.J.S.A. 2A:162-25.

## II

In preparing to implement the Act, the Supreme Court tasked the Criminal Practice Committee with drafting recommended amendments to the Court Rules. Several judges, representatives of the Attorney General, county prosecutors, the Office of the Public Defender, and private attorneys participated on the Committee. During the Committee's deliberations, the defense bar urged that the rules provide for broad discovery in pretrial detention hearings. The Attorney General and prosecutors expressed concern that requiring extensive discovery would pose

too great a burden on prosecutors and would transform pretrial detention hearings into "mini-trials" on a defendant's guilt or innocence, rather than a focused inquiry on whether the defendant should be released or detained pretrial.

After lengthy consideration, the Committee recommended that the pretrial detention discovery rule mirror Rule 3:13-3(a), which governs pre-indictment plea-offer discovery. Section 3(a) requires the State to provide, at the time of a pre-indictment plea offer, (1) all exculpatory material, and (2) "all available relevant material that would be discoverable at the time of indictment," unless the State determines that disclosure "would hinder or jeopardize a prosecution or investigation," or "would impose an unreasonable administrative burden on the prosecutor's office." R. 3:13-3(a).[6]

In making that recommendation, the Committee acknowledged that it was not without controversy:

> There were strong concerns raised about the nature of a detention hearing, and that it is supposed to be limited in scope. Some members noted that it would be overly burdensome for prosecutors to be required to provide 'complete' discovery, i.e., all material that must be turned over under current R. 3:13-3

---

[6] The Committee's proposed rule read as follows: "(b) if the prosecutor is seeking pretrial detention, the prosecutor shall provide all relevant material in its possession that would be discoverable at the time of indictment as set forth in paragraph (a) of Rule 3:13-3."

when the State tenders a plea offer. It was asserted that any such requirement would signal that the detention hearing could be as broad as a trial on the merits of the charge. Thus, it was important that the discovery obligation be limited to 'relevant material' in the prosecutor's possession since these hearings would be convening, in most instances, within a few days of arrest.

[CPC Report, supra, Part 1 at 51.]

In a strongly worded dissent, which was appended to the Committee's report, the Attorney General advocated a narrower rule that would still require the State to provide some discovery. The Attorney General's dissent relied on a proposal put forth earlier by Judge Martin Cronin, a Committee member, who proposed that discovery should be limited to exculpatory material and material related to the State's pretrial detention application. That proposal was aimed at giving a defendant an opportunity to challenge the basis for detention while also limiting the scope of discovery to only that which was relevant to the hearing.

In his dissent, the Attorney General stated: "To be clear, prosecutors do not dispute that under the new framework of the Bail Reform Law, available discovery must be provided to allow the defense to address the facts and arguments that the State will present at the pretrial detention hearing." He noted that "the weight of the evidence may be relevant," because it "relates directly to defendant's incentive to flee to avoid a likely trial

conviction." To address "the legitimate discovery needs of defendants facing pretrial detention hearings," the Attorney General proposed the following alternate version of the discovery rule:

> (b) if the prosecutor is seeking pretrial detention or release revocation, the prosecutor shall provide the defendant with <u>all statements or reports</u> in its possession <u>that relate to the facts upon which the prosecutor relies</u> in these motions.
>
> [Emphasis added.]

Contrary to the position the Attorney General and prosecutor asserted in this case, the Attorney General's proposed rule did not limit discovery to the probable cause affidavit and the PLEIR.

Ultimately, the Supreme Court did not adopt the "full discovery" approach advocated by the Committee and instead adopted a rule closer to the version advocated by the Attorney General. As adopted, subsections (A) and (B) of <u>Rule</u> 3:4-2(c)(1) distinguish between the State's discovery obligation if detention is not sought and the discovery that must be produced if the State files a detention motion.

> (A) if the prosecutor is not seeking pretrial detention, the prosecutor shall provide the defendant with a copy of any available preliminary law enforcement incident report concerning the offense and any material used to establish probable cause;

(B) if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed.

[R. 3:4-2(c)(1)(A), (B).]

III

Against that backdrop, we turn to the issue presented in this appeal. Our review of a trial court's legal interpretations - including "the meaning or scope of a court rule" - is de novo. State v. Hernandez, 225 N.J. 451, 461 (2016). In construing a court rule, we apply well-understood principles of statutory construction.

> When interpreting court rules, we ordinarily apply canons of statutory construction. Accordingly, as with a statute, the analysis must begin with the plain language of the rule. The Court must "ascribe to the [words of the rule] their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the [court rules] as a whole . . . ." If the language of the rule is ambiguous such that it leads to more than one plausible interpretation, the Court may turn to extrinsic evidence.
>
> [Wiese v. Dedhia, 188 N.J. 587, 592 (2006) (citations omitted) (alterations in original).]

Reading the plain language of subsection (B), we conclude that the words cannot support the State's cramped construction of

the provision.  When the State seeks pretrial detention, it must turn over "<u>all</u> statements or reports in its possession relating to the pretrial detention application," and not merely the probable cause affidavit and the PLEIR.  <u>R.</u> 3:4-2(c)(1)(B) (emphasis added).

If we had any doubts about that conclusion, they would be laid to rest by comparing section (A), which only requires that the State produce the PLEIR and the probable cause affidavit, and section (B), which requires that the State turn over "all statements or reports."  <u>R.</u> 3:4-2(c)(1)(A), (B).  If the Court intended the State's discovery obligation under section (B) to be as narrow as under (A), it would have used the same language in both sections.  We "must presume that every word" in subsection (B) "has meaning."  <u>Shelton v. Restaurant.com, Inc.</u>, 214 <u>N.J.</u> 419, 441 (2013) (quoting <u>Cast Art Indus., L.L.C. v. KPMG, L.L.P.</u>, 209 <u>N.J.</u> 208, 224 (2012)).

In considering the types of materials the State must produce, we also note that the Court used the term "relating to," which in normal usage means "to be about" or "connected with" something. Merriam-Webster, https://www.merriam-webster.com/dictionary/ relate%20to (last visited Feb. 3, 2017).  Considering that language in light of the rule's legislative history - the <u>CPC Report</u> and the Attorney General's dissent - we infer that the rule requires the State to produce those materials in its possession

which relate to the <u>facts</u> on which the State relies in its application.

In this case, the State relies on the facts that two eyewitnesses identified defendant as the shooter, and that a surveillance video supports the identification. Therefore, it must produce in discovery the materials relating to those factual assertions - i.e., the witness statements, the photo arrays, and the surveillance video.[7] The initial police reports must also be turned over, because they can be expected to provide the basic background facts concerning the time and place of the crime, the interviews of the witnesses, and the filing of the murder charge.

Contrary to the State's argument on this appeal, the required discovery is not limited to the <u>documents</u> on which the State claims to rely. Rather, it extends to those materials that "relate" to the State's application. Therefore, the State cannot avoid turning over discovery by claiming that it is only "relying" on the probable cause affidavit and the PLEIR. That argument is unpersuasive and contradicts the position the Attorney General espoused before the Committee.

---

[7] At oral argument, the prosecutor confirmed that the surveillance video was from an ordinary security camera located in the vicinity of the shooting, as opposed to a special law enforcement surveillance device.

A-1891-16T2

We are also unpersuaded by the State's expressed concern that allowing defendants to obtain discovery beyond the PLEIR and the probable cause affidavit will turn the pretrial detention hearings into mini-trials. The State's argument puts the proverbial cart before the horse. The scope of discovery will not necessarily determine the scope of the hearing. The latter issue is not before us on this appeal and we do not address it.

However, we do consider that the very limited discovery for which the State advocates could deny a defendant a fair opportunity to defend against the State's application, and could hamper the trial court's ability to fairly assess the nature and circumstances of the offense and the weight of the evidence. N.J.S.A. 2A:162-20(a) and (b) specifically allow the court to consider those factors.

In this case, the murder charge was based almost exclusively on witness identifications. If the circumstances surrounding them established that the identifications were weak or otherwise plainly unreliable, the basis for the State's application would diminish. Neither defendant nor the court would know this without review of the identification evidence. Whether the State intends to produce the witness statements at the hearing or call the witnesses to testify is not pertinent. The salient point is that defendant should have the opportunity to review the

24                                          A-1891-16T2

identifications to prepare a defense and to facilitate a court decision based on the circumstances of the case.

Moreover, although it may not be an issue in this case, discovery relating to the State's application may reveal to the court that the charges, while nominally supported by probable cause, appear exaggerated or a product of over-charging. As an example, a fistfight between two students in a schoolyard could result in charges ranging from simple assault to attempted murder. Or, review of a witness statement could result in a defendant discovering that he or she has an alibi for the alleged time of the crime. Considering the "nature and circumstances of the offense charged" and the "weight of the evidence" could significantly affect the court's decision on a detention application, even without holding a testimonial hearing. See N.J.S.A. 2A:162-20(a), (b).

Further, there is nothing unusual about providing a defendant with additional discovery rights where the State seeks to impose an additional burden on defendant's freedom or seeks to deprive a defendant of a traditional legal protection. While it is an imperfect analogy, our Court has held that in juvenile waiver hearings, the State must provide "[f]ull discovery" to "enable the juvenile and counsel to prepare for all facets of the hearing." N.H., supra, 226 N.J. at 245. At a waiver hearing,

25                                          A-1891-16T2

the State must establish probable cause that the juvenile committed an enumerated act and that the State did not abuse its discretion in requesting waiver. <u>Ibid.</u> The factors a court may consider are somewhat similar to those the court may consider at a detention hearing. <u>Compare</u> <u>N.J.S.A.</u> 2A:4A-26.1(c)(2) and (3), <u>with</u> <u>N.J.S.A.</u> 2A:162-20.

As explained by the Court, the waiver hearing is a "critically important event" in the process because the juvenile risks losing the protections afforded by the Family Court, which includes emphasis on rehabilitation and lesser sentences. <u>N.H.</u>, <u>supra</u>, 226 <u>N.J.</u> at 255. The Court acknowledged the importance of discovery in the waiver hearing process:

> Full discovery facilitates the court's review of all the issues to be addressed at the hearing. Full discovery also enables the juvenile and counsel to prepare for all facets of the hearing and decide how best to cross-examine the State's witnesses, whether the juvenile or others should testify, and how to assess and challenge the prosecutor's exercise of discretion.

> [<u>Id.</u> at 256.]

However, the Court noted that the State was free to seek a protective order "to redact, delay, or withhold the disclosure of materials that would expose witnesses and others to harm, hinder or jeopardize ongoing investigations or prosecutions, undermine the secrecy of informants and confidential information which the

law recognizes, or compromise some other legitimate interest." Ibid. (referring to R. 3:13-3(a)(1) and (e)(1)).

In this case, Rule 3:4-2(c)(1)(B) does not provide for full discovery. However, N.H. is instructive because it recognizes that at critical stages in a criminal proceeding, a defendant must be afforded "a meaningful opportunity to be heard." N.H., supra, 226 N.J. at 253. The discovery provided by section (B) is an important component of that opportunity.

In summary, we hold that Rule 3:4-2(c)(1)(B) obligates the prosecutor to provide a defendant with those materials in the State's possession that relate to the facts on which the State bases its pretrial detention application. Those "facts" are the factual assertions contained in the probable cause affidavit. The materials, which must be produced, include those referenced in the affidavit and in the PLEIR. In this case, the identification of defendant as the shooter was central to the State's application, and the trial court properly ordered the State to produce the eyewitness statements, the photo arrays, the surveillance video listed in the PLEIR, and the initial police reports.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1891-16T2