JUSTICE ALBIN,
dissenting in part and concurring in part.
Today, the majority rewrites the discovery rule governing pretrial detention hearings. In doing so, the majority turns a blind eye to an evident flaw in the original version of Rule 3:4—2(c)(1)(B) and then engrafts a new flaw onto the redrafted Rule. The result is that the prosecutor can withhold from the defense—and presumably the court—relevant and critical evidence that bears on whether there is probable cause to detain a defendant.
Under the redrafted Rule, if the prosecutor possesses a video surveillance tape that records the defendant allegedly committing a crime, the prosecutor need only turn over a written summary of what is depicted in the tape—not a copy of the tape itself. This is true even if the State’s only evidence to support probable cause is the tape. Thus, at a pretrial detention hearing, the court must rely on the written summary prepared by the prosecutor, not on the actual video footage of the crime, in making the probable cause determination. In contrast, if an eyewitness statement is the basis for establishing probable cause for a crime, the prosecutor must tender the statement to the defense—and the court. Therefore, the court receives the eyewitness statement in its original form whereas a surveillance tape is reduced to a bare written summary.
The Rule sanctifies artificial distinctions, making highly relevant evidence non-discoverable (a videotape) and second-hand evidence discoverable (written summary of tape). The redrafted Rule, moreover, gives the prosecutor a perverse incentive to place informa *79 tion in the Preliminary Law Enforcement Information Report (PLEIR), rather than the affidavit of probable cause, because the underlying statements and reports in the PLEIR are no longer subject to discovery.
Had the redrafted version of Rule 3:4-2(c)(1)(B) been subjected to the rulemaking process, or some abbreviated procedure that allows for public comment, perhaps we would be better informed about the implications of the new Rule. Relieving the prosecutor of legitimate discovery obligations may be expedient, but it comes at the expense of fairness. Ultimately, a just determination of whether a defendant is to be detained pretrial should not be sacrificed for the sake of expediency. For these reasons, I respectfully dissent.
I.
A.
In the case before us, the State sought the pretrial detention of defendant on a murder charge. In support of its application for pretrial detention, the State submitted an affidavit of probable cause that referred to two eyewitness statements recounting the crime and to the witnesses’ identification of defendant from a photo array. Attached to the probable cause affidavit was the PLEIR, which also referenced a surveillance video of the crime.
Rule 3:4-2(c)(1)(B)—now the former Rule—provided that “if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed.” Based on its interpretation of the “relating to” language in the Rule, the trial court ordered the prosecutor to disclose the two witness statements, the photo array, and the surveillance video. The Appellate Division affirmed. State v. Robinson, 448 N.J.Super. 501, 519-20, 154 A.3d 187 (App. Div. 2017).
*80 I agree with the majority that the Rule, as written, does not require discovery of the surveillance tape. The trial court and Appellate Division evidently attempted—by force of logic—to bridge the gap in the Rule. I accept that we must enforce the Rule according to its language, but now that the Court has undertaken to amend the Rule, the majority has missed the opportunity to correct the logical flaws in the original version.
Common sense suggests that if the prosecutor is in possession of a purported eyewitness account of a crime and a videotape that actually recorded the crime, and both are “relating to pretrial detention,” that both should be discoverable. The majority does not question that the eyewitness statement is discoverable. Yet, the majority will not amend the Rule to require disclosure of perhaps the best evidence—the videotape. The prosecutor’s only obligation, under the majority’s reconstructed Rule, is to provide a summary of the video footage to the defense. There is no persuasive rationale for denying the defense, and the court, the opportunity to view a readily available videotape of a purported crime.
To support its position, the majority mentions one bizarre and idiosyncratic case—without giving much detail—where the State was ordered to disclose video footage from twenty-five body-worn cameras in connection with a detention hearing. Ante at 67-69, 160 A.3d at 14-16. It makes perfect sense to deny discovery when disclosure is impracticable or when public safety or other legitimate concerns arise. It makes no sense to deny disclosure in garden-variety cases when a videotape is highly relevant and when disclosure is practicable.
The discordance in the majority’s approach is highlighted by the fact that the redrafted Rule requires disclosure of “copies of any photo arrays or photos used in the identification process,” see ante at 77, 160 A.3d at 20, but not the video footage of a crime from which the defense or the court could determine the validity of the identification. The photo array is no more a report or statement than video footage. The production of the video footage of a crime *81 would be as helpful as the photo array—if not more—in determining probable cause.
A pretrial detention hearing is a critical stage in the criminal process. The artificial distinctions made by the majority for allowing the release of relevant witness statements and reports as well as photo arrays but not allowing the release of relevant video footage will not enhance confidence in the fairness of pretrial detention hearings.
B.
Further, the majority’s amended Rule gives prosecutors a new pathway to minimize their discovery obligations at pretrial detention hearings. Under the former Rule, prosecutors were required to disclose statements and reports relating to the detention hearing, such as those referenced in the affidavit of probable cause and the PLEIR. Under the majority’s new Rule, the prosecutor must disclose statements and reports relating to the affidavit of probable cause, but any statements and reports contained in the PLEIR are not discoverable. Courts will make detention determinations after reviewing both the probable cause affidavit and the PLEIR. However, prosecutors now know that statements and reports referenced in the PLEIR are not subject to disclosure. The new Rule incentivizes prosecutors to put more information in the PLEIR (underlying statements and reports not discoverable) and the minimum amount of information in the affidavit of probable cause (underlying statements and reports discoverable). Prompts that allow prosecutors to circumvent the pretrial-detention discovery process will not advance the ends of justice.
Furthermore, the majority’s retrenchment on the discovery rule in pretrial detention hearings is at cross-purposes with N.J.S.A. 2A:162-20(a) and (b), in which the Legislature decreed that, at such hearings, “the court may take into account information concerning ... [t]he nature and circumstances of the offense charged [and] [t]he weight of the evidence against the eligible defendant.” Clearly, in many cases, relevant video footage and *82 statements and reports referenced in the PLEIR will bear on the “nature and circumstances of the offense” and on the “weight of the evidence against” the defendant. For example, video footage may show that the defendant was not the aggressor or even the assailant in a physical altercation. Neither the defense nor the court should have to rely on the prosecutor’s interpretation of the footage in a written summary. The limitations set forth in the amended discovery rule will choke off information that the court should consider in making the pretrial detention determination.
II.
The majority’s new Rule makes substantial changes to the discovery rule. This dissent shines a light on some defects in the new Rule. Had we proceeded with the rulemaking process, prosecutors, defense attorneys, judges, and academics might have alerted us to others. The rulemaking process is beneficial, even when it must proceed in an expedited and abbreviated manner. Although prosecutors and defense attorneys have widely divergent views on this subject, the voices of stakeholders and experts in the field are always enlightening. I understand that the majority believes this issue requires an accelerated response. We should proceed with caution, however, in matters that have such far-reaching consequences.
III.
For the reasons expressed, I dissent from the majority’s decision to draft a new rule that denies the defense and the court critical information bearing on the pretrial detention determination. I concur in the judgment in this case based on the language of the then-operative Rule.