**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3367-21

SHREE ATULYA REALTY, LLC,

    Plaintiff-Respondent,

v.

JORLINAR SANTOS,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

RAJAN & RAJAN, LLP,
MAHESH RAJAN, ESQ.,
PAUL R. RAJAN, ESQ., and
BHAVNA SHAH,

    Third-Party Defendants-
    Respondents.

_____

Submitted January 22, 2024 – Decided February 14, 2024

Before Judges Sabatino, Marczyk, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2608-19.

Tomas Espinosa, attorney for appellant.

Giordano, Halleran & Ciesla, PC, attorneys for respondent Shree Atulya Realty, LLC (Donald F. Campbell, Jr., and Steven W. Ward, of counsel and on the brief).

Rajan Legal, PC, attorneys for respondents Rajan & Rajan, LLP, Mahesh Rajan, and Paul R. Rajan (Eric Bradley Rochkind, of counsel and on the brief).

PER CURIAM

Defendant Jorlinar Santos appeals from the: (1) March 15, 2019 order denying his demand for a jury trial and June 23, 2020 order denying reconsideration of that order; (2) July 10, 2020 order denying his motion to disqualify counsel for third-party defendants Rajan & Rajan, LLP ("Rajan"), Mahesh Rajan, and Paul Rajan (collectively with Rajan, "the law firm defendants"); (3) August 11, 2021 order granting summary judgment to the law firm defendants; and (4) May 25, 2022 judgment following a bench trial. Based on our review of the record and the applicable principles of law, we affirm.

I.

A.

We summarize the facts developed in the record. Plaintiff Shree Atulya Realty, LLC ("Shree") is owned by Bhavna Shah and managed by her husband, Atul Shah. Shree was formed for the purpose of purchasing real property from

defendant located in Newark, New Jersey. Bhavna Shah retained Rajan to represent Shree in connection with the purchase.

On June 16, 2010, Shree, as buyer, and defendant, as seller, entered into an agreement of sale (the "Agreement") to purchase property located at 1110 & 1112 Broad Street in Newark (the "Property") for a total purchase price of $501,000 to be paid as follows: $10,000 downpayment; $50,000 seller financing; and the balance due at closing.

Section 2.2 of the Agreement addressed the seller financing as follows:

> [Defendant] agrees to provide financing in the sum of Fifty Thousand Dollars ($50,000[]) which shall be paid in two equal annual installments of $25,000[] with the first payment due one year from closing. Payment shall be conditioned on [defendant] completing all repairs as detailed in the inspection report of [Shree] as well as [defendant] clearing all title deficiencies and transferring the Multi-Dwelling [green card] for the premises to [Shree].

After the Agreement was signed, Rajan discovered several judgments, tax liens, and utility liens that needed to be resolved before Shree could take clear title to the Property. Rajan assisted defendant in securing payoffs and releases of the judgments and liens to provide clear title for Shree.

On August 16, 2010, the closing took place at Rajan's office. Defendant, who was not represented by counsel, executed the Agreement and delivered a

3

deed for the Property. On August 20, 2010, Shree executed a mortgage note (the "Note") in the amount of $50,000 to evidence the seller financing. To secure the Note, Shree delivered to defendant a mortgage on the Property in the amount of $50,000 (the "Mortgage"). Defendant continued to act as property manager after the closing.

On February 19, 2010, prior to the closing, the New Jersey Department of Community Affairs ("DCA") inspected the property. According to Shree, the DCA inspection report that was pending at the time of the closing was the inspection report referenced in the Agreement. On December 21, 2012, the DCA issued an inspection report finding several violations and requiring that all repairs be completed by February 19, 2013. The DCA inspected the Property again in 2013 and 2014, and determined many of the violations were not cured because required repairs were not completed. The DCA's findings were set forth in subsequent inspection reports. Because of the violations, the DCA assessed penalties against Shree in the total amount of $15,442.18.

Plaintiff retained a new property manager who made the necessary repairs at a cost of approximately $63,000. After the violations were cured, Shree satisfied the DCA penalties and obtained a multi-dwelling green card (certificate of inspection) for the Property. Shree subsequently advised defendant it was not

4

obligated to pay the $50,000 seller financing due to his failure to comply with Section 2.2 of the Agreement, and demanded defendant discharge the Mortgage. Defendant refused to do so.

B.

On June 25, 2018, Shree filed a complaint in the Chancery Division, General Equity Part, seeking to discharge the Mortgage. Shree asserted causes of action for declaratory judgment to cancel and discharge the Mortgage; breach of contract; unjust enrichment; and fraud. Shree did not request a jury trial.

On August 16, 2018, defendant filed an answer, counterclaim, and third-party complaint against the law firm defendants and Bhavna Shah.[1] Defendant asserted counterclaims for declaratory judgment; abuse of process; fraud on the court; breach of contract; and unjust enrichment. In his third-party complaint against the law firm defendants, defendant asserted claims for legal malpractice; fraud in the inducement/legal fraud; and violation of the New Jersey Consumer Fraud Act ("CFA"). Defendant did not request a jury trial. On October 24, 2018, the law firm defendants filed an answer to the third-party complaint which

---

[1] All claims against Bhavna Shah were dismissed by order entered June 14, 2019. Defendant does not appeal from that order, and the right to appeal therefrom is waived. See Kornbleuth v. Westover, 241 N.J. 289, 298-99 (2020); Naporano Assocs. v. B & P Builders, 309 N.J. Super. 166, 178 (App. Div. 1998).

A-3367-21

identified two associates employed by Rajan, Oscar A. Escobar, Esq. and Eric B. Rochkind, Esq., as counsel for the law firm defendants. None of the pleadings filed by any party included a jury demand.

The court conducted case management conferences on September 25, and December 6, 2018. On both occasions, the court issued case management orders that provided: "If the pleadings contain a jury demand any party seeking a jury trial shall file a motion for a jury trial within ten (10) days of today or the jury demand shall be deemed waived."

In February 2019, the parties filed cross-motions for summary judgment. Defendant also sought to transfer the case to the Law Division and requested a jury trial. On March 15, 2019, the court denied the parties' motions for summary judgment without prejudice and denied defendant's request for a jury trial, deeming it untimely and therefore waived pursuant to Rule 4:35-1(c). The court also transferred the case to the Law Division.

Discovery proceeded in the Law Division. On October 4, 2019, the court entered a consent order establishing a December 15, 2019 discovery end date and setting a February 10, 2020 trial date. The parties exchanged pre-trial submissions and appeared for the trial call on February 10 and 11, 2020. The

6

case was not reached, and the court rescheduled the trial. The trial was subsequently rescheduled several times because of the COVID-19 pandemic.

In May 2020, defendant moved to vacate the March 15, 2019 order denying his request for a jury trial. The court denied the motion finding no basis to reconsider the Chancery judge's determination defendant waived the right to a jury trial by failing to make a timely demand.

In June 2020, defendant moved to disqualify the associate attorneys employed by Rajan, Escobar and Rochkind, from representing the law firm defendants. The court denied the motion, finding there was no reason to disqualify Escobar and Rochkind because they would not be witnesses at trial. The court also found defendant's motion was untimely because he had been aware of the alleged basis for disqualification since October 2018, and "[t]here [was] absolutely no basis to suggest . . . there was a reason to wait two years" to seek disqualification.

In July 2021, the law firm defendants moved for summary judgment. The court granted the motion and dismissed the legal malpractice claim because defendant failed to serve an expert report in support of the claim.[2]

_____

[2] The court also dismissed the claims for fraud in the inducement, legal fraud, violation of the CFA, and joint and several liability. Defendant does not address

The court conducted a four-day bench trial. Defendant was the only defense witness. He testified the Agreement signed at the closing was inconsistent with the terms negotiated by the parties. Specifically, defendant claimed he did not agree to the seller financing provision and did not agree to make repairs or transfer the "green card." Defendant also testified he completed all required repairs.

The court issued a written opinion following trial. The court found defendant's claim that the Agreement was inconsistent with the intent of the parties "lack[ed] credibility" and the Agreement was the "operative agreement." The court also found, "having considered the credibility of the witnesses in light of the exhibits" in evidence, defendant was required to make the repairs necessary to cure the violations set forth in the DCA inspection reports and failed to do so. The court found, "[t]he contingency requiring repairs was not met by [defendant]. Thus, the [M]ortgage . . . is and shall be discharged and cancelled. Any obligation[] of [Shree] to pay pursuant to any [N]ote is nullified." The court entered judgment in favor of Shree on its claim for declaratory judgment, discharged and canceled the Mortgage, nullified and

_____

any of those claims in his brief and they are, therefore, waived. Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983) (holding issue not briefed beyond conclusory statements need not be addressed).

A-3367-21

canceled the Note, and ruled Shree had no obligation to pay defendant pursuant to the Agreement, Note, or Mortgage. The court dismissed all other claims. This appeal followed.

II.

On appeal, defendant argues the court erred in finding he waived his right to demand a jury trial and by denying reconsideration of that order. Specifically, defendant argues he was not able to demand a jury trial earlier because jury demands are not permitted in the Chancery Division, and his right to demand a jury arose when the case was transferred to the Law Division.

Defendant next argues the court erred in denying his motion to disqualify Escobar and Rochkind from representing the law firm defendants. Defendant essentially contends the law firm defendants were conflicted from representing themselves against his legal malpractice claim and were required to retain independent counsel.

Defendant argues the court erred by dismissing his legal malpractice claim for failure to serve an expert report because the case involves issues of common knowledge. More particularly, defendant contends expert testimony is not necessary because "any reasonable trier of fact can understand the causal

9

relationship between [the law firm defendant's] actions and the alleged loss . . . ."

Finally, defendant contends the court erred by entering judgment following the bench trial discharging the Mortgage and cancelling the Note. Defendant argues the court erred by finding his claims regarding the Agreement and required repairs were not credible.

### III.

Defendant's contention that the court erred by finding he waived his right to demand a jury trial is not persuasive. "Our review of a trial court's legal interpretations—including the meaning or scope of a court rule—is de novo." State v. Robinson, 448 N.J. Super. 501, 516 (App. Div. 2017) (internal quotation marks omitted).

A jury trial must be requested in a timely manner and the right to a jury trial may be waived. Carolyn Schnurer, Inc. v. Stein, 29 N.J. 498, 503 (1959). For the reasons that follow such a waiver occurred here.

Rule 4:35-1(a) provides:

> [A]ny party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor[e] in writing not later than [ten] days after the service of the last pleading directed to such issue. Such demand may be appended to the party's pleading.

Rule 4:35-1(c) provides: "[t]he failure of a party to serve a demand as" required under subsection (a) of Rule 4:35-1 "constitutes a waiver of trial by jury."

Defendant did not demand a jury trial until he moved for summary judgment on February 15, 2019, long after the time to make such a demand expired. His contention that Rule 4:35-1 was not applicable until the case was transferred to the Law Division is incorrect. R. 4:1 ("The rules in Part IV . . . govern the practice[s] and procedure[s] of civil actions in the . . . Chancery Division. . . .").

Defendant's argument that he was not permitted to demand a jury in the Chancery Division is also incorrect. A jury trial can be demanded on any legal claim in the Chancery Division. Ciba-Geigy Corp. v. Liberty Mut. Ins. Co., 149 N.J. 278, 291 (1997); O'Neill v. Vreeland, 6 N.J. 158, 167-68 (1951); Boardwalk Props., Inc. v. BPHC Acquisition, Inc., 253 N.J. Super. 515, 526-27 (App. Div. 1991). In fact, the case management orders expressly stated a jury could be demanded in the Chancery Division. The court correctly determined defendant waived his right to demand a jury trial.

The court did not abuse its discretion by finding defendant failed to establish good cause to relax the court rule. The court may, in its discretion,

11

relax the rules to permit a jury trial demand that previously had been waived, but only upon good cause shown.  Carolyn Schnurer, Inc., 29 N.J. at 502-03; see also R. 1:1-2.  Mere negligence, inadvertence, or oversight is insufficient to establish such good cause.  Id. at 504; ADCO Assocs., Inc. v. Admiral Corp., 165 N.J. Super. 437, 440-42 (App. Div. 1979); Sweeney v. Veneziano, 70 N.J. Super. 185, 190-91 (App. Div. 1961).  At best, defendant alleged mere negligence, inadvertence, or oversight.  He failed to set forth a sufficient basis for good cause to relax the rule.

Defendant's claim that the court erred by denying his motion for reconsideration is likewise not convincing.  "[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion."  Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  Defendant waited until May 22, 2020, more than one year after the March 15, 2019 order was entered and the after the parties exchanged pre-trial submissions and appeared at the February 2020 trial call, to move for reconsideration repeating the same arguments the court previously rejected.  The court did not abuse its discretion by denying the belated motion for reconsideration.

IV.

Defendant's claim that the court erred by denying his motion to disqualify counsel for the law firm defendants is entirely without merit. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). "[A] person's right to retain counsel of his or her choice is limited in that 'there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988) (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 477 (1980)). Nevertheless, the burden is on the movant to prove a basis for disqualification. State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). Furthermore, "disqualification motions are . . . viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019). The right to file such a motion may be waived if it is not exercised in a timely manner. Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1115 (D.N.J. 1993).

Defendant contends Escobar and Rochkind were prohibited from representing the law firm defendants pursuant to RPC 3.7 which provides: "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC

1.7 [concurrent conflict of interest] or RPC 1.9 [conflict with former client]." RPC 3.7(b).  Having sued the law firm defendants for legal malpractice, defendant waived any claims of attorney-client privilege.  See e.g., Connell, Foley & Geiser, LLP v. Israel Travel Advisory Servs., Inc., 377 N.J. Super. 350, 361-62 (App. Div. 2005) (stating clients waive attorney-client privilege when they sue for malpractice).  Neither the law firm defendants themselves nor the Rajan associates, Escobar and Rochkind, were precluded by R.P.C. 1.7 or 1.9 from defending the law firm defendants against defendant's malpractice claim. Because Escobar and Rochkind were hired by Rajan several years after the underlying transaction, there was no reason they would be called as witnesses at trial and were permitted to represent the law firm defendants pursuant to R.P.C. 3.7.  The court correctly denied defendant's motion to disqualify.

Even if defendant asserted a meritorious basis for disqualification, the court did not abuse its discretion by finding it was waived.  Defendant knew Escobar and Rochkind were representing the law firm defendants no later than October 2018, but waited sixteen months until June 17, 2020, to file his disqualification motion.  Defendant was not able to offer any viable explanation for the delay.  There is no basis to disturb the court's determination that defendant waived his right to seek disqualification.

V.

Defendant's contention that the court erred by granting summary judgment on his legal malpractice claim for failure to serve an expert report is similarly unconvincing. Generally, "[e]xpert testimony is required in cases of professional malpractice . . . ." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). "In rare cases, expert testimony is not required in a legal malpractice action where the duty of care to a client is so basic that it may be determined by the court as a matter of law." Ibid. Moreover, "the facts of a given case may be such that a layperson's common knowledge is sufficient to permit a finding that the duty of care has been breached." Ibid.

In this case, defendant contends the law firm defendants, who represented Shree as buyer, owed a separate duty to him as the seller in connection with a commercial real estate transaction. Defendant is not alleging simple ministerial errors such as failing to record a mortgage or file a claim within the statute of limitations. This is not a case in which the alleged duty of care and the breach of that duty are so basic as to fall within the common knowledge of the finder of fact. Defendant was required to offer expert testimony in support of his malpractice claim and failed to do so. The court correctly granted summary judgment dismissing the malpractice claim.

A-3367-21

Defendant's claim that the court erred by entering judgment in favor of plaintiff following the bench trial is not meritorious. In reviewing a judgment issued after a bench trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). We do not disturb a trial court's factual findings or legal conclusions unless they are so manifestly unsupported by the competent, relevant evidence that affirmance would constitute an injustice. Allstate Ins. Co. v. Northfield Med. Ctr., 228 N.J. 596, 619 (2017); Seidman v. Clifton Sav. Bank, 205 N.J 150, 169 (2011); Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Particular deference is owed to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified. Balducci v. Cige, 240 N.J. 574, 594-95 (2020); Seidman, 205 N.J. at 169.

Following a four-day bench trial, "having considered the credibility of the witnesses in light of the exhibits" in evidence, the court found defendant's claim that the Agreement was inconsistent with the parties' intent "lack[ed] credibility" and defendant breached the terms of the Agreement by failing to make required repairs. Because the court determined that defendant breached the express terms

of the Agreement, the court logically discharged the Mortgage and cancelled the Note. The court's decision was based on its assessment of the credibility of the witnesses and was firmly supported by competent, relevant evidence in the record. We discern no basis to disturb the court's judgment following trial.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3367-21