**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2814-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DONALD S. JACKSON,

    Defendant-Appellant.

_____

Submitted April 8, 2019 – Decided May 10, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 11-01-0001.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Lauren Martinez, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On January 4, 2011, a Mercer County Grand Jury indicted defendant Donald Jackson for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2)[1] (count two); and third-degree eluding, N.J.S.A. 2C:29-2(b) (count three). The charges stemmed from allegations that when police officers attempted to conduct a motor vehicle stop of defendant's vehicle for a violation, defendant eluded the officers, and discarded an object during the chase that turned out to be cocaine. Prior to trial on this case (the State case), defendant was arrested and charged with additional drug and weapons-related offenses, stemming from the execution of search warrants for his home and car. The prosecution resulting from this second arrest was ultimately taken over by federal authorities (the federal case).

Trial commenced on the State case on February 20, 2014. However, prior to its conclusion, the trial court discharged the jury, declared a mistrial, and disqualified defense counsel based on a perceived conflict of interest. A second trial commenced on September 15, 2015, after which the jury returned a verdict

---

[1] The indictment mistakenly cited N.J.S.A. 2C:35-5(b)(3), which pertains to a crime of the third-degree.

of guilty on all counts, and defendant received an aggregate extended term sentence of nineteen years, with an eight-year period of parole ineligibility.

On appeal, defendant raises the following points for our consideration:

POINT I

THE COURT IMPROPERLY DENIED [DEFENDANT] OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN IT RULED, IN THE MIDST OF TRIAL, THAT RETAINED PRIVATE COUNSEL WAS PRECLUDED FROM REPRESENTING HIM, WITHOUT CONDUCTING A PROPER ANALYSIS UNDER RPC[2] 1.7.

POINT II

THE TESTIMONY OF THE STATE'S WITNESS THAT THE DRUGS AT ISSUE WERE POSSESSED WITH THE INTENT TO DISTRIBUTE WAS IMPROPER AND DENIED [DEFENDANT] A FAIR TRIAL AND DUE PROCESS. . . . (NOT RAISED BELOW).

A. THE EXPERT OFFERED TESTIMONY THAT WAS NOT OUTSIDE THE KEN OF THE AVERAGE JUROR.

B. THE EXPERT OFFERED TESTIMONY THAT . . . DEFENDANT WAS GUILTY OF POSSESSION WITH THE INTENT TO DISTRIBUTE.

---

[2] Rules of Professional Conduct.

3

C.   THE EXPERT OFFERED AN OPINION ON THE MENTAL STATE OF THE ACCUSED AND, THEREBY, DECLARED   HIS GUILT OF THE ACCUSED CRIME, USURPING THE ROLE OF THE FACT FINDERS[.]

POINT III

THE TRIAL COURT IMPROPERLY DENIED THE DEFENSE REQUEST FOR AN INSTRUCTION TO THE JURY THAT THEY COULD DRAW AN ADVERSE INFERENCE FROM THE FAILURE OF THE POLICE TO PRESERVE THE MVR[3] TAPE[.]

POINT IV

THE COURT IMPOSED AN EXCESSIVE AND ILLEGAL SENTENCE AFTER IMPROPERLY CONSIDERING AND WEIGHING THE AGGRAVATING AND MITIGATING FACTORS AND IRRELEVANT INFORMATION[.]

A.   INAPPROPRIATE CONSIDERATION OF PRIOR CONTACTS WITH THE JUDICIAL SYSTEM[.]

B.   IMPOSITION OF AN ILLEGAL PERIOD OF PAROLE INELIGIBILITY[.]

C.   IMPOSITION OF A SENTENCE ON A MERGED COUNT[.]

---

3  Mobile Video Recorder.

A-2814-15T3

D. IMPOSITION OF A CONSECUTIVE SENTENCE WITHOUT A [YARBOUGH[4]] ANALYSIS.

After reviewing the record in light of the applicable legal principles, we conclude the trial court erred in disqualifying defense counsel during the first trial of the State case. Thus, we reverse defendant's convictions and remand for a new trial. Based on our decision, we decline to reach defendant's remaining arguments regarding purported trial errors. Our decision to overturn defendant's convictions and remand the matter for a new trial also obviates the need to reach defendant's challenge to his sentence.

We summarize the facts from the second trial of the State case. Shortly after midnight on August 28, 2010, Hamilton Township police officers David DeLeon and Thomas DeVictoria attempted to conduct a motor vehicle stop of a vehicle driven by an individual later identified as defendant because neither defendant nor his front seat passenger was wearing a seatbelt when the vehicle passed the officers' patrol car. Despite activating their lights and sirens, defendant failed to pull over and instead led the officers on "a very low speed pursuit" into Trenton that lasted approximately twelve minutes.

---

[4] State v. Yarbough, 100 N.J. 627 (1985).

During the pursuit, after defendant turned down an alleyway, the officers observed defendant toss a "golf ball sized white object in a plastic bag" over a fence on the left side of the alleyway. Defendant eventually pulled over after exiting the alleyway and was promptly arrested along with the passenger. Currency totaling $1480 in different denominations was seized from defendant's person during a search incident to his arrest. DeVictoria "immediately ran back to the area where the object was thrown" and retrieved the object defendant discarded, which was later confirmed to be cocaine.

At trial, the State presented four witnesses. Officers DeVictoria and DeLeon testified in detail about their encounter with defendant. Although their patrol vehicle was equipped with a MVR system, which recorded once the sirens were activated, DeVictoria failed to submit a timely request to preserve the MVR footage of the encounter before it "record[ed] over itself" in the normal course, resulting in the routine destruction of the recording. State Police Forensic Scientist David Dupnock testified as an expert and confirmed that the substance seized totaled one ounce of cocaine. Mercer County Prosecutor's Office Detective Joseph Angarone testified as a drug trafficking expert, explaining drug trafficking in relation to the quantity possessed, concealment or "distancing," manufacturing, packaging, distribution, and street value.

6

Following the guilty verdict, the court granted the State's motion for imposition of a mandatory extended term sentence pursuant to N.J.S.A. 2C:43-6(f), and imposed a fifteen-year term, with an eight-year period of parole ineligibility, on count two, a consecutive four-year term on count three, and a concurrent five-year term on count one, which the court also merged with count two.[5] Further, the court ordered the sentence to run concurrent with the federal sentence defendant was then serving on the federal case.[6] The court entered a memorializing judgment of conviction (JOC) on January 20, 2016,[7] and this appeal followed.

Defendant contends he was deprived of his Sixth Amendment right to counsel when his "retained private counsel" was disqualified. Defendant argues "[t]he court abused its discretion" in disqualifying his attorney without conducting "any meaningful analysis of the factors listed in RPC 1.7(a) to

---

[5] Defendant correctly points out that the imposition of a sentence on a merged count and the eight-year period of parole ineligibility imposed on count two were improper. See N.J.S.A. 2C:43-7(c) (providing that a term of parole ineligibility "shall . . . be fixed at or between one-third and one-half of the sentence imposed").

[6] On January 14, 2016, defendant was sentenced to seventy months on the federal charges.

[7] The JOC entered on January 20, 2016, was corrected on January 28, 2016, to reflect the actual sentence imposed.

A-2814-15T3

determine if a conflict existed" or giving defendant "an opportunity to waive any possible conflict." The State counters that the court "had no choice but to remove" defense counsel "[b]ecause there was a clear conflict under the Rules of Professional Conduct," and by not disclosing the details of the conflict "on the record in defendant's presence," the court properly "balanced the need for defendant to have a zealous representation" with the need "to protect the confidentiality of the confidential informant [(CI)]."

After the first trial on the State case commenced, on February 24, 2014, the court discharged the jury, declared a mistrial sua sponte, and disqualified defendant's privately retained counsel. Without detailing the reasons for the decision, the court informed defendant that it was relieving his attorney because "a conflict ha[d] developed" under "the Rules of Professional Conduct[,]" as a result of which the court was no longer "comfortable with [defense counsel] . . . continu[ing] to represent [defendant]." The court told defendant that the "information . . . [was] confidential in nature," and the court, as well as defense counsel, were "barred from disclosing it" to defendant. The court referred defendant "to the Public Defender's Office" for the assignment of counsel, reserving defendant's right "to hire whomever [he] want[ed,]" other than his disqualified counsel. However, defendant protested that having spent funds to

retain his present counsel, he could no longer afford to hire another private attorney of his choice.

After defendant left the courtroom, the court and counsel placed on the record their earlier in-camera discussion of the events that led to the disqualification. Defense counsel stated that over the weekend, during an interview with a preexisting client, he learned that the client was the CI who made a "controlled purchase of CDS from [defendant] at the request of the State's expert[] in [the State] case[,] Joseph Angarone[.]" According to defense counsel, that controlled purchase of CDS "led to [defendant's] arrest [in the federal case] two weeks before trial" in the State case. Defense counsel explained that although he did not represent defendant in the federal case, after following up with law enforcement, he confirmed that Angarone, was in fact "the search warrant affiant who had actually lined up [his preexisting client] to make [the] purchase" from defendant.

Defense counsel "consulted outside ethics counsel" and was advised to "disclose the information to the [c]ourt in[-]camera, and let the [c]ourt make the call" regarding whether he or his firm could "continue to represent [defendant]" in the State case. Defense counsel explained he "could see where the appearance of conflict would be significant given the facts of the case." Defense counsel

also acknowledged that because "the gravamen of the case" was whether defendant possessed CDS with intent to distribute, it would be "complicated" for him to cross-examine Angarone about that issue given that Angarone would be "in a position to respond to cross[-]examination" and say "well, yeah, I do have reason to believe that he possessed [the cocaine] with the intent to distribute based on a more recent investigation[.]"

The prosecutor summed up the conflict as defense counsel representing "the CI and the guy the CI got arrested." As to the cross-examination quandary, the prosecutor noted that while it was not a "violation of any rule per se[,]" defense counsel "would have to cross[-]examine . . . Angarone on the issue that he [was] an expert and a fact witness" in "a completely unrelated case." Acknowledging that Angarone's involvement as a fact witness in the federal case "could affect his ability to remain neutral and impartial" as an expert witness in the State case, the court advised the prosecutor that "clearly it should be another expert who [is] not part of . . . Angarone's unit to serve as an expert" in the State case. The prosecutor agreed.

After the court disqualified defense counsel from representing defendant in either the State or the federal case, defendant was assigned an attorney from the Office of the Public Defender, who represented defendant in his second trial

A-2814-15T3

of the State case. As noted, despite the prosecutor's agreement to use another expert, Angarone testified as the State's expert at the second trial. Moreover, in the time between the first and the second trial of the State case, defendant was charged and convicted in the federal case involving the CI and Angarone.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). "Where . . . the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw," we do not "defer to the trial judge's findings" or ultimate decision. State v. Bruno, 323 N.J. Super. 322, 331 (App. Div. 1999).

Consideration of this issue begins with a recognition that a non-indigent criminal defendant has a right to obtain counsel of his or her choice, United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006), State v. Kates, 216 N.J. 393, 395 (2014), and

> [w]here the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants . . . .
>
> [Gonzalez-Lopez, 548 U.S. at 148.]

"However, the right to counsel of one's choice is not absolute" because "[a] defendant's right to choose counsel is . . . circumscribed by the court's power to guard against conflicts of interest, and to vindicate the court's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012), (quoting Wheat v. United States, 486 U.S. 153, 160 (1988)). Thus, "although persons are entitled to retain qualified counsel of their own choice, there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." Reardon v. Marlayne, Inc., 83 N.J. 460, 477 (1980).

In that regard, RPC 1.7(a) prohibits attorneys from:

> represent[ing] a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1)   the representation of one client will be directly adverse to another client; or
>
> (2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

However, RPC 1.7(b) allows affected clients to provide informed written consent if "the lawyer reasonably believes that [he or she]" can provide the

impacted clients "competent and diligent representation"; "the representation is not prohibited by law"; and the affected clients are not adverse parties in the same litigation.[8]

In State v. Hudson, 443 N.J. Super. 276 (App. Div. 2015), we reversed the trial court's finding of a conflict of interest and resulting disqualification of the defendant's attorney based on the court's reliance on the abrogated "appearance of impropriety" doctrine, which was eliminated from all RPCs "in 2004, when the RPCs were amended." Id. at 288. We held that the "appearance of impropriety doctrine may not serve as a basis to disqualify counsel because of a perceived conflict of interest[,]" id. at 289, but rather "[c]onflicts must be actual and not merely appearance based." Id. at 292.

We directed the trial court on remand to "conduct a detailed review, thoroughly examining the facts surrounding the . . . representation" to determine whether "an actual conflict" existed. Ibid. We instructed that "[p]ertinent to this inquiry are findings on whether" the representation in one matter was limited in scope so as not to conflict with the other, and whether the attorney

_____

[8]   Under RPC 1.10(a), lawyers associated in a firm shall not "knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7" unless "the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."

would obtain information from representing one client that could be used to the client's "detriment during cross-examination were he to testify in the defendant's criminal case." Ibid. We cautioned that "the mere proffer of a witness who will not be called at trial may not be a basis to disqualify counsel." Ibid.

Although Hudson was decided the year following counsel's disqualification in this case, we relied on principles that were established in Bruno, 323 N.J. Super. at 322. There, no conflict of interest was found when defense counsel previously represented in a civil rights and worker's compensation matter the State's lead detective who would be testifying against the defendant in the criminal case. Id. at 324-25. Although the detective would not consent to defense counsel's representation because he intended to request the firm file an action reopening his claim, we concluded disqualification was improper because

> no actual conflict in counsel's former and current representations existed, and the firm's prior representation of the detective was limited in scope and, therefore, not subject to the same types of risk of gaining confidential information during that representation, which could be used to the detective's detriment during cross-examination were he to testify in the defendant's criminal case. Finally, we held an "informed citizen with full knowledge of the facts would conclude that there is no 'high risk' of impropriety here" and there is no "reasonable basis" to

14

conclude "these facts create an appearance of impropriety."

[Hudson, 443 N.J. Super. at 286-87 (citation omitted) (quoting Bruno, 323 N.J. Super. at 337-38).]

Here, the court disqualified defense counsel without conducting a detailed review, without thoroughly examining the facts surrounding the concurrent representation, and without determining whether defense counsel's representation of the CI and defendant created an actual conflict of interest in the State case. Indeed, it appears as if the court made the determination on appearance alone, as prohibited by Bruno and later Hudson. In fact, a thorough review of the record shows that because the CI had no involvement in the State case, and there was no indication that the CI would be called as a witness in the State case, any possible conflict would have arisen in connection with defense counsel's representation of defendant in the federal case. However, as defense counsel noted, he had not been retained by defendant in the federal case. Further, any adverse impact on defense counsel's ability to cross-examine Angarone would be obviated by the prosecutor's agreement to use a different expert witness in the State case, an agreement the prosecutor later violated.

As no actual conflict was established, but rather an appearance of impropriety or potential future conflict, the decision to disqualify defense

counsel was made in error. Additionally, because the court did not permit counsel to explain to defendant the basis of the disqualification, defendant was never given an opportunity to waive any conflict as authorized by RPC 1.7(b). Because disqualification was improper, defendant was erroneously deprived of his right to counsel of his choice. We therefore vacate defendant's convictions and remand this matter for a new trial.

Based on our decision on this issue, we decline to reach the remaining arguments raised by defendant in this appeal, other than to point out that any testimony by a drug trafficking expert presented by the State at a new trial would be governed by State v. Cain, 224 N.J. 410, 429 (2016), which "limit[ed] the scope of expert testimony in drug cases" and held that "an expert witness may not opine on the defendant's state of mind."

Further, as we held in State v. Richardson, 452 N.J. Super. 124, 134 (App. Div. 2017), where we addressed the pre-indictment destruction of evidence by the State, "the State may not destroy law enforcement's videorecording of an offense" by failing to preserve and produce the recording where "the recording enables a defendant to test the officer's version of what transpired." Ibid. We concluded that such destruction "violate[s] [the State's] implied obligations under the criminal discovery rules and our caselaw," and may warrant "an

16

adverse inference instruction."[9]  Id. at 132.  Although we concluded in Richardson that "defense counsel's timely request to preserve the evidence" made a particularly "strong" case "for such an adverse inference charge[,]" we recognized "that trial courts are vested with the discretion to fashion an appropriate sanction for a violation of discovery obligations" in order "to 'balance the scales' that the State tilted by permitting the recording's destruction."  Id. at 137-38.

Reversed and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9]  In that regard, "[w]e reject[ed] the State's contention [as we do here] that defendant was obliged to show the State acted in bad faith and the evidence was exculpatory" and held that "neither proof of bad faith, nor a showing that evidence is exculpatory, is essential to demonstrate a discovery violation or to justify an adverse inference charge."  Id. at 138.

A-2814-15T3